United States Court of Appeals,

Fifth Circuit.

No. 92-4946

Summary Calendar.

Rex Allen JERNIGAN and Rose B. Jernigan, Plaintiffs-Appellants,

v.

ASHLAND OIL INC., Ashland Pipe Line Co., and Drilled Crossings, Inc., Defendants-Appellees.

Rex A. JERNIGAN, Mrs., and Rex A. Jernigan, Mr., Plaintiffs,

v.

ASHLAND OIL INC., Ashland Pipe Line Co., Defendants.

April 30, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before KING, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Rex and Rose Jernigan (collectively, Jernigan) appeal the dismissal of their claims against Defendants-Appellees Ashland Oil Inc. (Ashland Oil), Ashland Pipe Line Co. (Ashland Pipeline), and Drilled Crossings, Inc., claiming that removal under 28 U.S.C. § 1446(b) was improper and, therefore, that the district court lacked subject matter jurisdiction. As we find that the district court possessed jurisdiction, we affirm.

I

FACTS AND PROCEEDINGS

While domiciled in Louisiana, Jernigan filed suit there in state court against Ashland Oil and Ashland Pipeline, both foreign corporations, and Drilled Crossings, a Louisiana corporation, for personal injuries suffered by Rex Jernigan while installing a pipeline under the Red River. On January 29, 1990, Jernigan amended his complaint, adding several more defendants—Theta II Enterprise, Inc. (Theta II), and "Baker Pipeline, Inc., a subsidiary of Theta II Enterprises, Inc." (Baker)—both Louisiana corporations. Jernigan also added Baker Pipeline, Inc. as a defendant, referring inartfully

to a previously liquidated Texas corporation named Baker Pipeline Construction Co., Inc. (Baker Pipeline Construction).

Baker, Theta II, and Drilled Crossings were served with copies of the amended pleading on January 29, 1990. Ashland Oil was served on February 2, 1990, and Ashland Pipeline was served on February 28, 1990. Ashland Oil removed the action to federal district court on March 30, 1990. Jernigan sought remand on grounds that removal was effected more than thirty days after the removing party received the initial pleadings.[1]

Ashland Oil responded, by affidavits, that its motion was timely because it had sought removal as soon as it became aware that the state court lacked subject matter jurisdiction; that previously the state court appeared to have had jurisdiction, albeit such appearance was erroneous, resulting from the fraudulent or improper joinder of non-diverse parties. This allegation of fraudulent joinder focused on Baker, which Ashland Oil claimed does not exist as a separate entity but merely as an unincorporated operating division of Theta II.[2] Finally, Ashland Oil argued that Theta II and Drilled Crossings are immune under the Louisiana Worker's Compensation Law,[3] and therefore must be disregarded for diversity purposes.

Jernigan did not respond to Ashland's affidavits, and the district court denied the motion to remand. Jernigan then filed a motion to reconsider, insisting that Jernigan's social security earnings show that he received wages from Baker, Baker Pipeline Construction, and Theta II. This was proof, Jernigan argued, that Baker is a separate entity from Theta II. In addition, Jernigan disputed Ashland Oil's contention that the contract between Theta II and Drilled Crossings predated the accident. If it did not, posits Jernigan, then Drilled Crossings would not be immune as a matter of law, and its citizenship would not be disregarded for diversity purposes.

The district court considered Jernigan's new evidence despite Jernigan's previous failure to

---

[1] 28 U.S.C. § 1447.

[2] There is some confusion whether Baker as merely a division of Theta II or an incorporated wholly-owned subsidiary, but for purposes of the legal issues here under consideration, that distinction is immaterial, so long as Baker was not a separate entity independent of Theta II.

[3] LA.REV.STAT.ANN. 23:1032, 23:1061.

respond to the first motion.  Stating that a district court may resolve factual disputes to determine jurisdiction, the district court found "ample evidence" that the subject contract between Theta II and Drilled Crossings existed prior to the date of the accident.  The district court concluded therefore that Drilled Crossings was immune and that its citizenship must be disregarded for diversity purposes. Consequently, the district court denied the motion to reconsider and subsequently granted summary judgment motions for all the defendants.  Jernigan timely appealed.

## II

## ANALYSIS

The sole issue before us is whether, by virtue of diversity, the district court possessed subject matter jurisdiction over Jernigan's claim against Ashland Oil.  This issue implicates two considerations:  (1) was Ashland Oil's removal proper;  and (2) did the district court err in determining that a contract existed between Theta II and Drilled Crossings, the absence of which would make joinder of Theta II proper and destroy diversity and require remand.  Before beginning our analysis of these issues, some background discussion is helpful.

It is axiomatic that diversity jurisdiction, the alleged basis of this court's jurisdiction in the instant case, requires complete diversity between plaintiffs and defendants.  In other words, for diversity jurisdiction to exist, no plaintiff may be a domiciliary of the same state as any defendant. In the instant case, the respective domiciles of the parties are not in dispute;  plaintiffs are both Louisiana domiciliaries;  Ashland Oil and Ashland Pipeline are foreign corporations;  the remaining defendants are Louisiana corporations.  As long as any of the Louisiana corporations are separate defendants in this case, complete diversity among the parties is lacking, making the district court powerless to decide the underlying claim.  If, on the other hand, the Louisiana corporations are not considered separate from the non-Louisiana corporations, Ashland Oil and Ashland Pipeline, for purposes of determining diversity jurisdiction, then this case is one that could have been brought in federal court originally, making removal proper and remand improper.

As the district court's opinion demonstrates, Ashland Oil contends that the Louisiana corporations should not be considered in determining diversity.  Ashland Oil insisted, and the district

court so found, that Baker is not a proper party because it is not a separate entity, but is in fact a division of Theta II. (The same result would appertain if Baker were separately incorporated but wholly owned by Theta II.) And, Theta II's citizenship is irrelevant because it is Jernigan's employer and, under Louisiana law, Jernigan's remedies against his employer are restricted exclusively to his workers' compensation damages. As Theta II thus may not be held liable in tort to Jernigan, its citizenship is not considered in determining diversity. Ashland Oil's final contention is that Drilled Crossings is also the statutory employer of Jernigan by virtue of Theta II's contract with Drilled Crossings, in which Theta II, as Drilled Crossings subcontractor, agreed to perform the services that Drilled Crossings had contracted to perform for Ashland Oil.

A. *Removal*

Ashland Oil states without contradiction that the first time it could have realized that Drilled Crossings and all of the other defendants were improperly joined was when it received a copy of Drilled Crossings' answer, filed on March 23, 1990. Ashland Oil immediately compared the answers of Drilled Crossings and Theta II, then communicated with counsels for these companies, recognizing for the first time possible the relationship between Drilled Crossings and Theta II. A week later, on March 30, 1990, Ashland Oil removed the case to federal court pursuant to § 1446(b), which provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty (30) days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by § 1333 of this Title more than one (1) year after commencement of the action.[4]

Ashland Oil thus avers that not until March 23, 1990, could it discover that none of the Louisiana corporations were proper defendants and that therefore diversity jurisdiction existed. Jernigan has never controverted this assertion, so we, like the district court, accept as true Ashland Oil's contention that it was not aware that the case was removable until March 23rd.

Jernigan does, however, attack the validity of Ashland Oil's removal on two grounds. First,

---

[4]28 U.S.C. § 1446(b).

he asserts that the removal was not timely. But, he does so measuring the thirty days from the initial service of the defendants, not from the time Ashland Oil discovered the availability of removal. Jernigan's argument is without merit, however, as § 1446(b) expressly grants an additional thirty days from the time that a defendant discovers that the case has become or always has been removable. The thirty days is measured from receipt of whatever writing—in this case Drilled Crossings' answer—constitutes first notice. Ashland Oil's notice of removal was filed well within the thirty days granted under § 1446(b).

Jernigan also attacks the form of the notice of removal, insisting that it is fatally flawed because Ashland Oil neglected to obtain the consent of all codefendants and failed to explain the lack of such consent. We do not dispute Jernigan's statement of the law; as a general rule, removal requires the consent of all co-defendants. In cases involving alleged improper or fraudulent joinder of parties, however, application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists.

Neither can we agree with Jernigan's contention that Ashland Oil's failure to explain the absence of its codefendants' consent is fatal. Ashland Oil's notice to remove makes clear that it takes the position that no other proper defendant exists. Certainly, if there is no need to obtain the consent of the improperly or fraudulently joined defendants, it follows that the defendant need not explain the absence of consent.

B. *Determination of Jurisdiction*

Once a case has been removed, the removing party bears the burden of proving that the court has jurisdiction to hear the claim.[5] If the removing party alleges jurisdiction on the basis that non-diverse parties have been fraudulently joined, then the removing party must prove the existence of fraud.[6] To prove its allegation of fraud, Ashland Oil "must show either that there is *no possibility*

---

[5]*Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992) (citations omitted).

[6]*Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

that the plaintiff would be able to establish a cause of action against the in-state defendant in state court;  or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts."[7]

In determining whether the joinder of parties was fraudulent, the district court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff."[8]  In this context, the proceeding "is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P., Rule 56(b)."[9]  If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then there is no fraudulent joinder.[10]

Ashland Oil proceeded to prove that, as a matter of law, Jernigan cannot establish a cause of action against any of the Louisiana corporations in state court.  In support of this position, Ashland Oil submitted affidavits and depositions to the district court.  That court found such evidence compelling and concluded that the Louisiana corporations had been fraudulently joined.  In reaching this conclusion, the court found that there was ample evidence to support Ashland Oil's claims that (1) Baker was a division or subsidiary of Theta II and had no independent existence;  and (2) a contract existed between Drilled Crossings and Theta II at the time of the accident.  Included in the district court's findings is the fact that Baker Pipeline Construction had been dissolved, making legally impossible any role of that corporation in the instant occurrences.

Although the district court appears to have articulated the incorrect standard when it concluded that it could resolve factual disputes in determining jurisdiction,[11] we find that the result

---

[7]*B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir.1981).

[8]*Id.* at 549.

[9]*Id.* at 549 n. 9.

[10]*Bobby Jones Garden Apts. v. Suleski,* 391 F.2d 172, 177 (5th Cir.1968).  Jernigan correctly asserts that the district court applied the wrong standard, apparently misreading *Miller Brewing Co.,* 663 F.2d at 545, for the proposition that a district court could resolve factual disputes in order to determine jurisdiction.  As we explain below, however, the district court's misplaced reliance on *Miller Brewing* does not alter the outcome of this case, however, as application of the correct standard mandates the same result.

[11]*See supra* note 10.

reached was nonetheless the correct one. A review of the record discloses that in actuality there are no genuine issues of material fact. Rather, the only "issues" allegedly contested are unilateral with Jernigan, produced entirely by his own confusion as to the identity of his employer. As with a summary judgment motion, in determining diversity the mere assertion of "metaphysical doubt as to the material facts"[12] is insufficient to create an issue if there is no basis for those facts. In the instant case, there are just no facts available to be construed in Jernigan's favor because as a matter of law his allegations of corporate and contractual relationships simply cannot exist.

Jernigan's arguments are not entirely clear. He concedes in his pleadings that Baker is a subsidiary of Theta II,[13] and he admits, at least implicitly by his arguments, that Theta II was his statutory employer.[14] Nonetheless, he continues to dispute whether Theta II had entered into a contract with Drilled Crossings at the time of his injury. His argument on this point consists of two elements. First, he notes that the contract dated January 6, 1989 was between Drilled Crossings and *Baker Pipeline,* not Theta II. Second, he refers to testimony of James R. Baker, Jr., that Jerry G. Baker, the party who signed the contract, was the sole owner of Baker Pipeline Construction Co. and that Jerry G. Baker had no connection with Theta II enterprises.

Stated more cogently, Jernigan claims that the "Baker Pipeline" listed on the contract is in fact Baker Pipeline *Construction,* which he mislabeled in his complaint as Baker Pipeline, Inc. But, even if we construe Jernigan's factual disputes and contradictions in his favor, he must fail on his allegations as a matter of law. It is indisputable that the contract on its face is between Drilled Crossings and Baker, *not* Baker Pipeline Construction. Moreover, at the time the contract was executed, Baker Pipeline Construction had been dissolved under Texas law and no longer existed as a legal entity. In his deposition testimony, James A. Baker, Jr. testifies that, although his brother

---

[12]*Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

[13]Jernigan's amended complaint names as a defendant "Baker Pipeline, Inc., a subsidiary of Theta II Enterprises, Inc."

[14]Specifically, he concedes that if there is a contract between Theta II and Drilled Crossings, then Drilled Crossings is immune from suit. This can only be true if Theta II is Jernigan's statutory employer.

Jerry held no formal office or position within Theta II, he (James) had authorized Jerry Baker to sign the contract on Theta II's behalf.

The only evidence Jernigan proffers in response as contradicting these undisputed facts is his own, conclusionary allegation that Jerry Baker entered into the contract with Drilled Crossings on behalf of his (nonexistent) corporation, Baker Pipeline Construction.[15] Such a bold, unsupported allegation is insufficient to raise a genuine issue of material fact in a summary judgment proceeding, and it is equally inadequate here.

### III

### CONCLUSION

After stripping this case of the obfuscation that results from Jernigan's confusion between two similarly named companies—Baker Pipeline and Baker Pipeline Construction—we conclude as a matter of law that he is unable to recover from any of the named Louisiana corporations in state court. His statements to the contrary are insufficient as a matter of law, as they are nothing more than conclusionary allegations, wholly lacking in specific factual support. As a result, the Louisiana corporations were improperly joined, so their citizenship is to be disregarded for purposes of determining diversity jurisdiction. Ashland Oil and Ashland Pipeline, the only remaining proper defendants are foreign corporations, entitled to remove the case wit hin thirty days following their discovery of the improper joinder of the Louisiana corporations—which they did. Finally, Jernigan's arguments regarding the timeliness and form of the removal are without merit.

For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

[15]Jernigan did submit evidence that the had received payments from Baker Pipeline Construction. It is conceded by Theta II, however, that Jernigan had previously been employed by Baker Pipeline Construction prior to its dissolution. Evidence of these payments, therefore, is irrelevant to the issue of his employment at the time of the accident, as he implicitly concedes by his arguments that he was then an employee of Theta II.