Sonya JONES, Kim Brown, Thomas Bennett, Troy Locklear, et al.

v.

The DOW CHEMICAL COMPANY and the People's Water Service Company of Louisiana, Inc.

No. 94–192–B–2.

United States District Court, M.D. Louisiana.

Dec. 7, 1994.

Marvin Gros, Marvin Gros, Attorney At Law, Donaldsonville, LA, for plaintiffs Sonya Jones, Kim Brown, Thomas Bennett, Troy Locklear.

Marvin Gros, Michael McClanahan, Gabrielle Gros, Law Office of Marvin Gros, Donaldsonville, LA, for remaining plaintiffs

Richard B. Foster, Charles R. Talley, S. Scott Bluestein, Lemle & Kelleher, L.L.P., New Orleans, LA, David Mark Bienvenu, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, John A. Gray, Dow Chemical Co., LA Div. Legal Dept., Plaquemine, LA, for defendant Dow Chemical Co.

Ronald Joseph White, Maria Nan Alessandra, Robert U. Soniat, James Melvin Jacobs,

Phelps Dunbar, New Orleans, LA, for defendant The People's Water Service Company of Louisiana, Inc.

## RULING ON THE PLAINTIFFS' MOTION TO REMAND

POLOZOLA, District Judge.

This matter is before the Court on the plaintiffs' motion to remand. For the reasons which follow, the plaintiffs' motion is denied.

## PROCEDURAL HISTORY

This suit was filed in state court by Sonya Jones, Kim Brown, Thomas Bennett and Troy Locklear—seeking to establish a class action against the defendants, The Dow Chemical Company ("Dow") and Peoples Water Service Company of Louisiana, Inc. ("Peoples"). The plaintiffs contend they are residents of Donaldsonville, Louisiana, and users of that city's water supply operated by Peoples.[1] They contend that Peoples' water supply was contaminated by a chemical spilled from Dow's plant in Plaquemine, Louisiana, which traveled down the Mississippi River and was drawn in by Peoples' water intakes on Bayou Lafourche. Although Peoples is located adjacent to the Mississippi River in Donaldsonville, it draws its water from Bayou Lafourche rather than the river. Bayou Lafourche is fed water from the Mississippi via the Walter LeMann Pumping Station operated by the Bayou Lafourche Fresh Water District (BLFWD).[2]

The defendants timely removed the case to this court on the basis of diversity of citizenship and federal question jurisdiction. The plaintiffs now seek to remand this suit to state court on the ground that there is no diversity between the parties. Dow opposes this motion to remand on two grounds: (1) Dow argues that since Peoples has been fraudulently joined as a defendant, there is diversity of citizenship between the plaintiffs and the only properly joined defendant, Dow;[3] and, (2) Dow maintains that the suit involves a federal question and is removable on that basis notwithstanding the citizenship of the parties.

## FACTS

On December 19, 1993, at approximately 10:30 a.m., Dow experienced an accidental spill of perchloroethylene (also known as tetrachloroethylene)[4] at its plant in Plaquemine.[5] Dow's security personnel detected the spill at about 1:21 p.m. and immediately instituted efforts to contain the chemical.[6] Although most of the chemical was contained within Dow's plant, a quantity of perchloroethylene migrated to the plant's cooling water canal where about 69.2 gallons (935 pounds) of the chemical was discharged into the Mississippi River.[7]

By 2:00 p.m., Dow had notified a number of federal, state and local governmental authorities about the spill,[8] and by 2:30 p.m., Dow had contacted the Early Warning Organic Compound Detection System of the Louisiana DEQ.[9] The DEQ, in turn, notified

---

1. The Peoples' water plant in Donaldsonville provides drinking water to about 4,000 residential and commercial customers in Donaldsonville and the surrounding area. Stapler Aff. ¶ 3.

2. Aff. of Stapler at ¶¶ 4 & 5.

3. Peoples also opposes the plaintiffs' Motion to Remand. In their Memorandum in Opposition to the Plaintiffs' Motion to Remand, Peoples also argued that remand would be improper because it was a nominal defendant.

4. Perchloroethylene is a colorless and essentially non-flammable volatile liquid hydrocarbon that has been used for many years as the primary solvent in commercial and industrial dry cleaning.

5. Pls.' Mem.Supp.Remand, Ex. A at 1.

6. Sanderson Aff. ¶¶ 4 & 5.

7. Durham Aff. ¶ 10; Sanderson Aff. ¶ 7.

8. Darryl Sanderson, an Environmental Associate employed by Dow, personally called and reported the spill to the Louisiana State Police at 1:31 p.m., the Iberville Parish Sheriff's Office at 1:35 p.m., the Louisiana Department of Environmental Quality (DEQ) at 1:38 p.m. and the National Response Center (U.S. Coast Guard) at 1:54 p.m. Sanderson Aff. ¶ 4.

9. Pls.' Mem.Supp.Remand, Ex. A at 1.

the Louisiana Department of Health and Hospitals.[10]

At approximately 6:20 p.m., an engineer at the BLFWD Walter LeMann Pumping Station was notified that a chemical spill had occurred at Dow. The engineer immediately notified his supervisor, Eddie Bellina, and Peoples of the spill.[11] All pumps at the pumping station were shut down from 8:00 p.m. that day until 5:30 a.m. on December 20, 1993.[12]

Everett Stapler, the superintendent of Peoples, was initially notified of the spill at home by the BLFWD engineer. Subsequently, Stapler was contacted by Dow's Senior Environmental Specialist, Joe Crescionne, and asked to meet at the Peoples' plant at 8:30 p.m. At their meeting, Stapler and Crescionne took samples from Peoples' raw water intake on Bayou Lafourche. The samples were tested and no perchloroethylene was detected. The next morning, at approximately 9:00 a.m., Stapler again took and tested a sample from the raw water intake and also a sample from the settling basin in the plant. As before, the tests revealed that no perchloroethylene was present. Additionally, Stapler testified that similar tests were run at least twice a day before and after the spill, and that at no time on December 19, 1993, or during the following week, was any perchloroethylene detected in the water at Peoples.[13]

During this same 6:00 to 6:30 p. m. time period, Dow requested various downriver water users to take samples of river water at their locations. Dow then sent its own personnel to pick up these samples for analysis and also took additional samples at various locations itself. Dow also hired the engineering firm of CK Associates to take samples from the river by boat.[14]

George Durham, a Regulatory Issues Supervisor employed by Dow, had the various samples tested using gas chromatographs located in Dow's laboratories in order to determine whether perchloroethylene was present and, if so, in what concentration.[15] The tests continued until Durham went home at approximately 8:00 a.m. on December 20, 1993. According to the table attached as Exhibit "B" to Durham's affidavit (a summary of the test results), all of the samples tested contained less than one-half parts-per-billion of perchloroethylene.[16]

## FRAUDULENT JOINDER

■ In the Fifth Circuit, claims of fraudulent joinder are disposed of in a summary judgment-like procedure.[17] "A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse party."[18] The district court is authorized to consider evidence outside the pleadings such as affidavits and deposition transcripts accompanying the notice of removal or motion to remand as well as factual allegations contained in the verified complaint.[19]

■ The removing party bears the burden of proving fraudulent joinder and that the court has subject matter jurisdiction to hear the claim.[20] As recently noted by the

10. Pls.' Mem.Supp.Remand, Ex. A at 1.

11. Pls.' Mem.Supp.Remand, Ex. A at 1; Stapler Aff. ¶¶ 6–7.

12. Pls.' Mem.Supp.Remand, Ex. A at 1.

13. Stapler Aff. ¶¶ 1 & 13–18.

14. Durham Aff. ¶ 3.

15. Durham Aff. ¶ 4. Durham also reviewed the chromatograms associated with the spill. Durham Aff. ¶ 5.

16. Durham Aff. para. 8. This level is approximately one-tenth the level (five parts-per-billion) considered safe for drinking water according to the standards set by the Environmental Protec-

tion Agency in the Clean Water Act. Pls.' Mem.Supp.Remand, Ex. A at 2; 40 C.F.R. § 141.61.

17. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994); *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.1990).

18. *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir.1992).

19. *Elsbury*, 32 F.3d at 935; *Carriere*, 893 F.2d at 100.

20. *Elsbury*, 32 F.3d at 935; *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993); *Carriere*, 893 F.2d at 100; *Collins v. AAA Rent All, Inc.*, 812 F.Supp. 642, 643 (M.D.La.1993).

Fifth Circuit in *Ford v. Elsbury*,[21] this burden is a "heavy one." It is not within the court's province to attempt to resolve factual disputes "where the disputed factual issues relate to matters of substance."[22] The standard is clear: "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned."[23] In other words, there is no fraudulent joinder if there is arguably a reasonable basis for predicting that a state court might impose liability under the facts of the case.[24]

■ In order to establish liability under Louisiana Civil Code article 2315, the plaintiffs are required to produce evidence which would support a claim of liability against Peoples.[25] Mere allegations or conclusions of law are insufficient. In their petition, the plaintiffs allege that Peoples is liable for the following acts of negligence: (1) "[f]ailure to cut off water intakes once notified of the chemical in the water;" (2) "[f]ailure to notify all its customers that such water may have had chemicals in the water;" and (3) "[f]ailure to notify public officials of the possible danger."[26]

The plaintiffs reiterated these allegations in their Motion to Remand and attached a "chronology of events" prepared by the BLFWD with their memorandum in support. However, not only does the chronology fail to support the plaintiffs' allegations, the exhibit directly contradicts facts asserted by the plaintiffs in their memorandum.

For example, all three of the plaintiffs' claims against Peoples rest upon a finding that the Peoples' water supply was contaminated by the spill. However, the BLFWD's chronology fails to demonstrate that any of the chemical actually made its way into the Peoples' water system. The chronology merely states that trace elements of the compound were present at 0.48 parts-per-billion based upon test samples taken from the Mississippi River intakes (not the Peoples' water supply).[27] The report concludes "that very little, if any, of the compound actually made its way into Bayou LaFourche."[28] Because Peoples draws its water from Bayou LaFourche and not the Mississippi River, the chronology not only fails to support the plaintiffs' allegations that the compound was in Peoples' water supply, it indicates that the compound never reached Bayou Lafourche.

Moreover, the evidence introduced by Dow also indicates that no amount of perchloroethylene made its way into the People's water supply. Dow's evidence stands uncontroverted by the plaintiffs.

As with motions for summary judgment "the mere assertion of 'metaphysical doubt as to the material facts' is insufficient to create an issue if there is no basis for those facts."[29] Conclusionary allegations of the non-moving party, wholly lacking in specific factual support are insufficient to raise a genuine issue of material fact in the face of other uncontroverted evidence.[30] This is the situation here. The defendants have introduced evidence which indicates there is no genuine issue of material fact as to whether Peoples might be liable under state law. The plaintiffs, on the other hand, have simply failed to introduce evidence which supports their allegations. Because the plaintiffs have failed to show that there is a possibility of recovery against Peoples under Louisiana law, the Court concludes that Peoples has been fraudulently joined in this suit in order to defeat the diversity of citizenship jurisdiction of this Court.

**21.** 32 F.3d 931 (5th Cir.1994).

**22.** *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 n. 14 (5th Cir.1981).

**23.** *Carriere*, 893 F.2d at 100.

**24.** *Jernigan*, 989 F.2d at 816.

**25.** La.Code Civ.P. art. 854.

**26.** Pls.' Pet at ¶ 8.

**27.** Pls.' Mem.Supp.Remand, Ex. A at 2.

**28.** Pls.' Mem.Supp.Remand, Ex. A at 2.

**29.** *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 816 (5th Cir.1993).

**30.** *Jernigan*, 989 F.2d at 817.

## JURISDICTIONAL AMOUNT

■ Under 28 U.S.C. § 1332, not only must there be complete diversity of citizenship between all parties, the matter in controversy must also exceed $50,000.00 in order for the Court to exercise diversity jurisdiction.[31] In order for a court to dismiss a case for lack of jurisdictional amount, it must appear to a legal certainty that the claim is for less than the jurisdictional amount.[32]

■ The fact that the plaintiffs requested a trial by jury, which is only available under Louisiana law if a plaintiff's claim exceeds $50,000.00,[33] and did not plead damages in such a way as to show lack of federal court jurisdiction, indicates to the Court that the plaintiffs' claims exceed the $50,000.00 amount in controversy requirement.[34] Louisiana case law further indicates that the jurisdictional amount is present in this case.[35] Additionally, the Court finds that the named plaintiffs and members of the alleged class have a common and undivided interest in their punitive damages claim. Consequently, the punitive damages can be aggregated to meet the jurisdictional amount.[36] Finally, in their Motion to Remand, the plaintiffs failed to argue that the amount in controversy was less than $50,000.00, relying solely on the contention that there was a lack of diversity between it and Peoples. Therefore, the Court is persuaded that the $50,000.00 amount in controversy is present and that it may properly exert diversity jurisdiction in this case.

## FEDERAL QUESTION

■ Dow also argues that this Court has federal question subject matter jurisdiction under the Safe Drinking Water Act (SDWA).[37] Although not pleaded in the plaintiffs' original petition, Dow maintains that the Act forms the sole and only basis for the plaintiffs' claim against Peoples for failure to notify all subscribers.

The SDWA allows citizens' suits against persons "alleged to be in violation of any requirement prescribed by or under this subchapter...."[38] The United States Supreme Court, in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,*[39] interpreted the identical language found in the Clean Water Act[40] as not authorizing citizens' suits absent a continuous or intermittent violation.[41] Thus, because the plaintiffs' petition does not allege an "ongoing" violation—a jurisdictional prerequisite to the maintenance of a SDWA claim—the Court determines that it lacks federal question jurisdiction under the SDWA.[42]

---

**31.** 28 U.S.C. § 1332(a).

**32.** *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1021 (5th Cir.1992); *Hale v. Billups of Gonzales, Inc.,* 610 F.Supp. 162, 163–64 (M.D.La.1985) (the party invoking the federal court's jurisdiction has the burden of proving that the amount in controversy does not appear to a legal certainty to be less than the jurisdictional amount).

**33.** La.Code Civ.P. 1732 provides that a trial by jury is available only if a plaintiff's claim exceeds $50,000.00.

**34.** La.Code Civ.P. 893 provides that if pleading damages is necessary to show lack of federal court jurisdiction then the plaintiffs should state that their damages are less then the requisite amount. The plaintiffs failed to do so.

**35.** *See Chinigo v. Geismar Marine, Inc.,* 512 So.2d 487 (La.App. 1st Cir.1987); *Lasha v. Olin Corp.,* 634 So.2d 1354 (La.App. 3d Cir.1994).

**36.** *Zahn v. International Paper Co.,* 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973); *Lailhengue v. Mobil Oil Corp.,* 775 F.Supp. 908 (E.D.La.1991); *Martin v. Granite City Steel Corp.,*

596 F.Supp. 293 (S.D.Ill.1984); *In re: N. Dist. of Cal. "Dalkon Shield" IUD Products Liab. Litig.,* 526 F.Supp. 887 (N.D.Cal.1981), vacated on other grounds, 693 F.2d 847 (9th Cir.1982).

**37.** 42 U.S.C. § 300f–300j (West 1991).

**38.** 42 U.S.C. § 300j–8(a)(1) (West 1991).

**39.** 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

**40.** 33 U.S.C. § 1365(a) (West 1986 & Supp. 1994).

**41.** *Gwaltney,* 484 U.S. at 56–65, 108 S.Ct. at 381–85.

**42.** *See Mattoon v. City of Pittsfield,* 980 F.2d 1, 6–7 & n. 7 (1st Cir.1992); *Hamker v. Diamond Shamrock Chemical Co.,* 756 F.2d 392, 396 (5th Cir.1985); *Vernon Village, Inc. v. Gottier,* 755 F.Supp. 1142, 1147 & n. 1 (D.Conn.1990); *Cooper v. Armstrong Rubber Co.,* No. CIV.A.J88–0464(L), 1989 WL 60338, at *10–12 (S.D.Miss. Feb. 1, 1989); *Chaplin v. Exxon Co.,* No. CIV.

## CONCLUSION

After construing all disputed facts in the plaintiffs' favor, the Court determines that as a matter of law, the plaintiffs would be unable to recover from Peoples in a Louisiana state court. The plaintiffs allegations to the contrary are unsupported by even a minutia of evidence.

Because the Court concludes that Peoples was improperly joined, its citizenship is disregarded for purposes of determining diversity jurisdiction. The Court finds that without Peoples, diversity subject matter jurisdiction is proper under the facts of this case. The requisite jurisdictional amount is also present. While the Court does have jurisdiction under 28 USC § 1332, it does not have federal question jurisdiction under the SDWA under the facts of this case.

The plaintiffs' request for sanctions under Rule 11 of the Federal Rules of Civil Procedure is denied.

Therefore:

**IT IS ORDERED** that the plaintiffs' motion to remand be and it is hereby **DENIED**. **IT IS FURTHER ORDERED** that Peoples Water Service Company of Louisiana, Inc., shall be dismissed as a defendant in this case, without prejudice. **IT IS FURTHER ORDERED** that plaintiff's request for sanctions under Rule 11 of the Federal Rules of Civil Procedure be **DENIED**.

A.H–84–2524, 1986 WL 13130, at *11–13    (S.D.Tex. June 10, 1986).