Tyus WASHINGTON,

v.

MOTHER WORKS, INC.
and Laura Lopinto.

No. CIV.A. 01–3340.

United States District Court,
E.D. Louisiana.

April 16, 2002.

Clarence O. Dupuy, Jr., Gregory A. Dupuy, Dupuy & Dupuy, Metairie, LA, for plaintiff.

Shawn L. Holahan, Brynn Marie Baiamonte, Hoffman, Siegel, Seydel, Bienvenu, Centola & Cordes, APLC, New Orleans, LA, for defendants.

## Order & Reasons

FALLON, District Judge.

Before the Court is Plaintiff's Motion to Remand. For the following reasons, the motion is DENIED.

## I. BACKGROUND

Plaintiff, Tyus Washington, originally filed this suit on September 28, 2001, in Civil District Court for the Parish of Orleans, alleging claims against both her former employer, Mother Works, Inc., and her former supervisor, Laura Lopinto. Plaintiff's claims against Mother Works alleged intentional employment discrimination based on race, in violation of title 23, section 332, of the Louisiana Revised Statutes, while her claims against Lopinto alleged intentional infliction of emotional distress, pursuant to Louisiana Civil Code article 2315. Defendants removed the case on November 5, 2001, invoking this court's diversity jurisdiction and claiming that "Ms. Lopinto has been fraudulently joined in the action to defeat diversity and federal court jurisdiction." *See* Petition for Removal, at 3.

Plaintiff moves to remand and offers two alternative bases. First, Plaintiff asserts that the Defendants' notice of removal was not timely, "having been filed thirty-two

days after the October 4, 2001 service of citation and pleadings on the defendant, Mother Works, Inc." *See* Motion to Remand, at 2. Second, Plaintiff argues that remand is appropriate because Lopinto, a Louisiana resident, was not fraudulently joined. According to Plaintiff, the "cause of action against Ms. Lopinto for intentional infliction of emotional distress is supported by verified factual allegations in both the petition and the supporting affidavit." *See id.* at 5.

In opposition, Defendants maintain that this case presents "a clear and unequivocal example of fraudulent joinder." *See* Defendants' Opposition to Motion to Remand, at 1. The Defendants explain that Plaintiff's termination was not a product of racial discrimination or an attempt to inflict emotional distress, but rather was a direct result of Plaintiff's chronic, unsatisfactory job performance. Defendants argue that removal of this case is warranted, because "Plaintiff's allegations [against Lopinto], even if believed, do not support intentional infliction of emotional distress under Louisiana law." *See id.* at 7. Finally, Defendants dismiss Plaintiff's "timeliness" argument as contrary to well-settled case law, and argue that if the Court remands this case, Plaintiff is not entitled to an award of costs or attorney fees.

## II. LAW AND ANALYSIS

### A. Fraudulent Joinder

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court." *See* 28 U.S.C. § 1441(a)(1994). District courts have original jurisdiction of all civil actions between citizens of different states in which the matter in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332(a)(1). It is axiomatic that "for diversity jurisdiction to exist, no plaintiff may be a domiciliary of the same state as any defendant." *See Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815 (5th Cir.1993)

The removing party bears the burden of proving that a district court has jurisdiction over a matter. *See Jernigan,* 989 F.2d at 815. In cases of alleged "fraudulent joinder," this burden is a "heavy one." *See B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). The removing party must demonstrate *either* that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," *or* "that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *See id.*

In assessing claims of fraudulent joinder, a court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of plaintiff." *See id.* at 549. Courts are expressly authorized to "pierce the pleadings," and consider affidavits and deposition testimony in a summary judgment-type fashion. *See Carriere v. Sears, Roebuck, & Co.,* 893 F.2d 98, 100 (5th Cir.1990). However, a "district court *must* resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *See id.* (emphasis added). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no fraudulent joinder." *See Jernigan,* 989 F.2d at 816 (quoting *Bobby Jones Garden Apts. v. Suleski,* 391 F.2d 172, 177 (5th Cir.1968)). Courts are not to "determine whether the plaintiff will actually or even probably prevail on the merits of the claim," but should "look only for a possibility that the plaintiff might do so." *See Burden v. General Dynamics Corp.,* 60 F.3d 213, 216 (5th Cir. 1995).

## B. Intentional Infliction of Emotional Distress

In this case, the Defendants bear the "heavy burden" of establishing that there is no possibility that the Plaintiff might prevail on the merits of her claim of intentional infliction of emotional distress against the non-diverse Defendant, Laura Lopinto. The elements of a claim of intentional infliction of emotional distress were delineated by the Louisiana Supreme Court in *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). To prevail a plaintiff must prove: 1) that the conduct of the defendant was extreme and outrageous; 2) that the emotional distress of the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Id.* at 1209.

> The *White* court further explained that: [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

*See id.*

Courts have also recognized that a "plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." *See id.* at 1210. However, recognition of a cause of action in a workplace setting is "usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *See id.; see also Bustamento v. Tucker*, 607 So.2d 532, 538 (La.1992) (explaining that "this has been characterized as a sliding scale approach under which even relatively 'mild' harassment may become tortious if continued over a substantial period of time"). Moreover, cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress." *See Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1027 (La.2000).

In this case, Plaintiff argues that "[t]his is not a case where a reasonable person should have been able to tolerate the conduct." *See* Motion to Remand, at 6. In support of remand, Plaintiff describes, in affidavit form, a series of alleged encounters and events involving Ms. Lopinto which purportedly constitute the intentional infliction of emotional distress. Plaintiff's complaint focuses largely on Lopinto's "regular" use of racial slurs such as "girl" and "your kind of people," two instances of "ridicule" for missing work to tend to her mother, who was suffering from cancer, and another instance of "ridicule" and "insult" when tending to her personal medical needs. *See* Affidavit of Tyus Washington, at 4–5. Plaintiff also claims that although she was promoted to store manager, Ms. Lopinto did not acknowledge her as a manager, and subjected her to several demeaning requirements such as "signing in and out" of work and "taking sick leave" any time she missed work. *See id.* at 5. Plaintiff also emphasizes that although she was promoted to a management position, she was paid on an hourly basis, in contrast to all other store managers who were salaried employees. *See id.*

Plaintiff also claims that on one occasion Lopinto "went on a yelling jag," accusing Plaintiff of signing out eight minutes late

and of "stealing company time." *See id.* at 5–6. According to Plaintiff, this episode further demonstrated Lopinto's intent to embarrass and undermine Plaintiff in the presence of other employees.

The gravamen of Plaintiff's intentional infliction of emotional distress claim, and her primary basis for remand, is alleged "quid pro quo discrimination by a supervisor who personally terminated the employee solely on the basis of race and for the purpose of and desiring to inflict emotional distress on the employee." *See* Motion to Remand, at 6. According to the Plaintiff, in spite of her unblemished employment record, Ms. Lopinto "refused to hire [her] for [a management position] and instead hired a much less qualified white female," and "intentionally terminated [Plaintiff] because of [her] race." *See* Affidavit of Tyus Washington, at 3 & 8.

In reply, Defendants dispute many of the factual allegations contained in Plaintiff's motion and affidavit. As a threshold matter, Defendants submit that the Plaintiff was a "chronic poor performer," who, contrary to Plaintiff's assertions, received several negative performance evaluations prior to her termination. According to the Defendants, Plaintiff was not terminated because of her race, or in an effort to inflict emotional distress, but because of a well-documented history of chronic, work-related deficiencies including overall poor management, improper phone charges, tardiness, and absenteeism. *See* Defendants' Opposition to Motion to Remand, at 6.

Addressing Plaintiff's specific allegations, Defendants argue that even if accepted as true, the claims simply do not rise to the requisite level of "extreme and outrageous" conduct to constitute the tort of intentional infliction of emotional distress. Defendants maintain that Plaintiff has mischaracterized terms such as "girl" and "your kind of people," which are not racial slurs, but "innocuous parlance." *See id.* at 11–12. Defendants also emphasize the fact that Plaintiff is an "at-will" employee, who, under Louisiana law may quit or be terminated at any time. *See id.* at 9–10.

Defendants repeatedly emphasize the relatively brief time frame at issue in this case. According to the Defendants, because Ms. Lopinto supervised the Plaintiff for only seven weeks, her conduct during that period simply cannot rise to the "pattern of deliberate, repeated harassment over a period of time" required to support a claim under Louisiana law. *See Nicholas,* 765 So.2d at 1026.

The Court finds that the allegations in this case, considered in the light most favorable to the Plaintiff, simply do not rise to the high level of "extreme and outrageous" conduct, over a sufficient period of time, to constitute a tort under existing Louisiana law. Louisiana courts have repeatedly emphasized that "conflict in a pressure-packed work environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." *See White,* 585 So.2d at 1210. Moreover, in the workplace setting, tortious cases generally involve "a pattern of deliberate, repeated harassment over a period of time." *See id.* "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *See id.* at 1205.

In this case, the conduct complained of lasted, at most, a matter of weeks and did not constitute a "pattern of harassment," over a lengthy period of time, to rise to the level of "intentional acts" as that term is construed under Louisiana law. *Compare, e.g., Bustamento,* 607 So.2d at 534 (involving almost daily verbal and sexual harassment, over two-year period); *Wright v. Otis Eng'g Corp.,* 643 So.2d 484, 487 (La. App. 3d Cir.1994) (involving five years of

harassment). Moreover, while Plaintiff herself characterizes much of the offending conduct as instances of "insults" and "ridicule," the Louisiana Supreme Court has expressly held that liability for the intentional infliction of emotional distress "does not extend to mere insults [or] indignities" and that "persons must necessarily be expected to be hardened to ... occasional acts that are definitely inconsiderate and unkind." *See White*, 585 So.2d at 1205.

The Court finds that there is no possibility that the Plaintiff could prevail on her claim of intentional infliction of emotional distress against Defendant, Laura Lopinto. Accordingly, Plaintiff's motion to remand is DENIED.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED.[1]

---

1. The Court notes that Plaintiff's unsupported "timeliness" argument is without merit. Rule 6(a) expressly provides that "[i]n computing any period of time ... the day of the act, event, or default from which the designated time period begins to run shall not be included." *See* Fed.R.Civ.P. 6(a); *see also Barton v. Lloyd's of London*, 883 F.Supp. 641, 642 n. 3 (M.D.Ala.1995) ("In calculating the thirty-day time period for filing a notice of removal, the date on which the defendant receives the summons and complaint is excluded from the computation."). Rule 6(a) further provides that "[t]he last day of the period so computed shall be included, *unless it is a Saturday ...* in which event the period runs until the end of the next day which is not [a Saturday or other holiday]." *See* Fed.R.Civ.P. 6(a) (emphasis added). In this case, Defendant was served on October 4, 2001 and removed this case on November 5, 2001. Excluding the date of service, the thirty-day period extended until Saturday, November 3, 2001. In accordance with Rule 6(a), the removal period ran until the end of the next day which was not a Saturday, Sunday or legal holiday, in this case, Monday, November 5, 2001.