Carolina Pru BELLORIN, et al., Plaintiffs,

v.

BRIDGESTONE/FIRESTONE, INC., Bridgestone Corp., Smithers Transportation Test Center, a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company, Defendants.

No. 01–CV–34.

United States District Court, W.D. Texas, Pecos Division.

Aug. 30, 2001.

---

**222.** Docket no. 16, SA–99–CA–987.

**223.** *Id.*

Michael A. Caddell, Caddell & Chapman, Houston, TX, Scott Johnson, Pecos, TX, Albert G. Valadez, Valdez Law office, Fort Stockton, TX, Alberto A. Munoz, II, Munoz, Hockema & Reed, McAllen, TX, for plaintiffs.

H. Ronald Welsh, Vinson & Elkins, Houston, TX, Knox D. Nunnally, Houston, TX, Michael Warren Mengis, Vinson & Elkins, L.L.P., Houston, TX, for Bridgestone/Firestone, Inc., defendant.

Burgain Garfield Hayes, Jr., Trek C. Doyle, G. Robert Sonnier, Clark, Thomas & Winters, Austin, TX, Alejandro Acosta, Jr., El Paso, TX, for Bridgestone Corp., defendant.

John W. Weber, Jr., Fulbright & Jaworski, L.L.P., San Antonio, TX, for Smither's Transportatiom Test Center, defendant.

Mark Gregory Sessions, Andrew L. Kerr, Holland & Knight, LLP, San Antonio, TX, for Del Rio Test Center, Inc., defendant.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

FURGESON, District Judge.

Before the Court is Emergency Motion to Remand by the Plaintiffs Carolina Pru Bellorin, et al. ("Plaintiffs"), filed on July 10, 2001, in the above-styled case. After careful consideration, the Court is of the opinion that Plaintiffs' Motion should be GRANTED.

### PROCEDURAL HISTORY

Plaintiffs are Mexican and Venezuelan citizens who allegedly have suffered personal injuries and property loss as a result of automobile accidents involving Ford Explorers. According to Plaintiffs, in all of these accidents, at least one of the tires on the Ford Explorers suddenly and completely failed, causing the driver to lose control of the vehicle. Plaintiffs aver that the failing tires were Firestone brand tires, which were designed, manufactured, and distributed by Defendants Firestone and Bridgestone. All of the accidents occurred in either Mexico or Venezuela.

Plaintiffs filed their original complaint on May 11, 2001, in the 143rd District Court, Reeves County, Texas, naming Firestone, Inc. ("Firestone"), Bridgestone, Inc. ("Bridgestone"), Ford Motor Company ("Ford"), Smithers Transportation Test Centers ("Smithers"), and Del Rio Test Centers, Inc. ("Del Rio") as Defendants. Plaintiffs filed their First Amended Com-

plaint on June 12, 2001. Defendants Firestone, Bridgestone, and Del Rio Test Center timely filed Notice of Removal on June 15, 2001. Defendants Ford and Smithers consented to removal. Plaintiffs filed a Motion to Remand on July 10, 2001.

Defendants notified this Court on July 13, 2001 that they had filed a Motion to Transfer the case to the Multidistrict Litigation panel pursuant to 28 U.S.C. 1407. Consequently, Defendants seek a stay of the proceedings, specifically the determination of Plaintiffs' Motion to Remand, pending transfer to the MDL panel. A hearing was held on July 26, 2001 on Plaintiffs' Motion to Remand.

## DISCUSSION

### I. Defendants' Motion for Stay

■ Defendants request that the Court stay its determination of Plaintiff's Motion for Remand pending transfer to the MDL. In support, Defendants assert that determination of this issue can and would be best handled by the transferee court. The Court disagrees.

Rule 1.5 of the RULES OF PROCEDURE FOR THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION specifies that the pendency of a motion to transfer pursuant to 28 U.S.C. § 1407 does not affect or suspend the pre-trial proceedings in the district court in which the action is pending; nor does the pendency of a motion to transfer in any way limit the pre-trial jurisdiction of the district court. Accordingly, until transfer is ordered by the MDL panel, the district court retains its authority to determine pre-trial motions and issues.

■ The Court finds no reason to stay the proceedings pending transfer. One of the principles governing the 30–day time limit to file a notice of removal is Congress's intention that the issue of federal jurisdiction be determined in an expedi-

tious manner. The Court can find no justification for delaying the determination of this issue. Nor does the Court find that the issue of whether remand is warranted would be better decided by the transferee court, rather than this Court. The purpose for consolidating cases under the Multidistrict Litigation statute is to decrease the duplicity and redundancy by having coordinated discovery for cases "involving one or more common questions of fact pending in different district." 28 U.S.C. § 1407(a). Here, the issues raised by Plaintiffs' Motion to Remand are unique to this case and would benefit little from coordinated discovery under the MDL panel. For example, the Court doubts that the other suits already transferred present the question of whether Bridgestone would be held liable by a Texas court applying Mexican and/or Venezuelan law.

Accordingly, though the Court recognizes that transfer to the MDL panel does not deprive Plaintiffs of the opportunity to seek remand if their suit has been improperly removed, the Court cannot find any justification for avoiding or delaying the determination of this issue. Therefore, Defendants' Motion for Stay is DENIED.

### II. Plaintiffs' Motion to Remand

■ Defendants removed the suit to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. However, Plaintiffs counter that removal to federal court was improper for two reasons. First, since all the plaintiffs are either Mexican or Venezuelan citizens and Bridgestone is a Japanese corporation there is no diversity because alien parties exist on both sides of the controversy. *See Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1152 (5th Cir.1985); 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H.COOPER, FEDERAL PRACTICE AND PROCEDURE § 3661 n.6 (3rd ed. 1998) ("Diversity

jurisdiction may not be involved in a suit between individual alien and an alien corporation."). Second, removal from Texas state court to federal court was unwarranted because defendants Smithers and Del Rio are both citizens of Texas. *Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254, 1258 (5th Cir.1988) ("[e]ven if complete diversity does exist, the case may not be removed from state to federal court if any defendant is a citizen of the state in which the action is brought."). To overcome both of these grounds, Defendants argue that Bridgestone, Smithers, and Del Rio Testing Center were fraudulently joined and, therefore, must be disregarded in determining whether diversity exist at the time of removal.

The party removing a case to federal court bears the burden of proving that the court has jurisdiction. *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815 (5th Cir.1993). If removal is predicated on allegations that a non-diverse party has been fraudulently joined, then the removing party must establish the existence of fraudulent joinder. *Id.* at 815. Fraudulent joinder may be established by proving either (1) that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court" or (2) that "there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Id.* (emphasis in original). Here, the removing Defendants argue only that Plaintiffs have no possibility of recovering against Bridgestone in a Texas state court.

It is important to define the Court's task in determining the remand issue. The question is not whether Plaintiffs will eventually prevail against Bridgestone; nor is the question whether Plaintiffs are even likely to recover against Bridgestone. Rather, the only question that the remand issue poses to the Court is

whether the removing Defendants have established that there is no possibility that Plaintiffs would be able to establish a cause of action against Bridgestone, Del Rio, or Smithers in a Texas court. *Jernigan,* 989 F.2d at 815. In determining whether there is any possibility of recovery, the Court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Id.* at 816 (citation omitted). This standard is similar but not identical to the standard used in ruling on a motion for summary judgment. As such, the district court cannot find fraudulent joinder if there is *any reasonable possibility* that the state law might impose liability on the non-diverse defendant. *Id.* As the Fifth Circuit has repeatedly emphasized, "[t]he burden of proving a fraudulent joinder is a heavy one." *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983).

The Court's analysis of the fraudulent joinder issue begins with the claims asserted by Plaintiffs against Bridgestone as stated in their First Amended Complaint filed in the state court, on June 12, 2001, prior to the Notice of Removal, filed on June 15, 2001. *Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 264 (1995) (recognizing that, in removal cases, the district court determines jurisdiction by examining plaintiff's complaint as written at the time of removal).

### A. Could a Texas court reasonably find that Bridgestone is subject to personal jurisdiction in Texas?

Defendants' first argument is that Plaintiffs could not possibly recover against Bridgestone in a Texas state court because Bridgestone is not subject to personal jurisdiction in Texas. In so far as Bridgestone must establish that there is no reasonable possibility that a Texas state court

would find that it has personal jurisdiction over Bridgestone, the Court disagrees.

█ In Texas, the plaintiff has the initial burden of pleading a prima facie case of personal jurisdiction. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 634 (Tex.App.-Dallas 1993, writ denied). However, the non-resident defendant moving for dismissal for lack of personal jurisdiction carries the burden of negating all bases of personal jurisdiction. *Joe Guerra Exxon Station v. Michelin Tyre Public Ltd. Co.,* 32 S.W.3d 383, 386 (Tex.App.-San Antonio 2000, no writ).

█ A Texas court may exercise jurisdiction over a non-resident defendant if it is amenable to service of process under Texas's long-arm statute and asserting personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996); *Electrosource, Inc. v. Horizon Battery Technologies,* 176 F.3d 867, 871 (5th Cir.1999). Since Texas's long-arm statute, Tex. Civ. Prac. & Remedies Code Ann. §§ 17.041–17.069 (Vernon 1997), has been interpreted as extending to the limits of federal due process, the personal jurisdiction analysis collapses into the single inquiry of whether the exercise of personal jurisdiction is consistent with the requirements of due process under the Fourteenth Amendment. *CSR,* 925 S.W.2d at 594.

█ The due process requirements are met when (1) the defendant has both certain minimum, purposeful contacts with the forum state and (2) maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *CMMC v. Salinas,* 929 S.W.2d 435, 437 (Tex.1996); *see also Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 595 (5th Cir.1999). Though the question of personal jurisdiction is ultimately a question of law, the issue often requires the resolution disputed facts. Again, for the purposes of fraudulent joinder, all factual disputes are resolved in favor of the plaintiff. *Jernigan,* 989 F.2d at 815.

### 1. The Minimum Contacts Inquiry

█ The first requirement for the exercise of personal jurisdiction is that the defendant have had certain minimum, purposeful contacts with Texas. The minimum contacts inquiry essentially seeks to determine whether the defendant purposefully availed itself of the privilege of conducting activities in Texas, thereby invoking the benefit and protection of Texas laws. *CMMC,* 929 S.W.2d at 438–39 (*citing Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 110–112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). The precise number of contacts with the foreign state is not controlling. *see Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983). The minimum contacts requirement ensures that it is reasonable for the non-resident defendant to foresee being haled into court in the foreign forum based on those contacts. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

█ The minimum contacts analysis is further refined into two types of jurisdiction-general and specific. *Happy Industrial Corp. v. American Specialties, Inc.,* 983 S.W.2d 844, 848 (Tex.App.-Corpus Christi 1998, writ dism'd w.o.j.). General jurisdiction exists where the non-resident defendant's contacts with the forum are so continuous and systematic that the forum may exercise personal jurisdiction over the non-resident defendant even if the cause of action did not arise from specific activities within the forum. *Id.* at 848. The parties agree that personal jurisdiction over

Bridgestone can only be established by general jurisdiction.

■ Here, the Court is of the opinion that Bridgestone has failed to show that there is no reasonable possibility that a Texas state court would find that the minimum contacts requirement has been met. Bridgestone correctly points out that it is not licensed to do business in Texas and does not maintain a registered agent for service of process in Texas; nor does it directly conduct business in Texas. It maintains no offices or places of business. It has not ever incurred any obligation to pay taxes in Texas. It has no employees in Texas. Bridgestone further alleges that it has not conducted any advertising, solicitation, marketing or other sales promotions in Texas; nor does it design, manufacture, sell, advertise, deliver any of its goods or products in Texas. The inquiry, however, does not end here. There are several plausible grounds upon which a Texas court might find personal jurisdiction over Bridgestone.

### a. The Theory of Alter Ego and/or the Functional Whole

■ Under Texas law, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business in Texas. However, if the parent corporation exerts such control over its subsidiary that the subsidiary acts merely as a conduit through which the parent conducts its business, then the parent corporation may be considered to be doing business through the activities of its subsidiaries. *Daimler–Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 720 (Tex. App.-Austin 2000), *pet. stricken by*, 53 S.W.3d 308, 2000 WL 1508842 (Tex. Oct.12, 2000). For such imputation to occur, the degree of control exercised by the parent must be greater than normally associated

with common ownership and directorship. *Id.* Texas law requires that the court consider several factors: whether daily operations of the two corporations are separate; whether both corporations are distinct and adequately capitalized financial units; whether the subsidiary's stock is owned by the parent; whether the two corporations share common officers and directors; the extent to which separate books and accounts are kept; whether an officer or director of the parent is permitted to determine the policies of the subsidiary; and whether customers readily distinguish between the parent and subsidiary. *Id.* at 720–21. This list is not exhaustive. Plaintiffs carry the burden of proving that disregard for the corporate structures is warranted. *Id.* at 721.

Several facts in the instant case raise the possibility that Plaintiffs would be able to establish that disregard for the separate corporate identities is warranted for the purpose of determining personal jurisdiction. First, Bridgestone owns 100% of Firestone's stock. Next, there is some duplication and overlap concerning shared corporate directors and officers. The CEO of Firestone, Masatoshi Ono, has jointly served as an Executive Vice–President and member of the Board of Directors of Bridgestone. The deposition of Robert Martin, a representative for Firestone, taken in another case supports Plaintiffs' argument that Bridgestone has had a significant influence in the management policies of its subsidiaries including Firestone.

In addition to these factors, the structure of the distribution network between Bridgestone and its subsidiaries lends itself to the possibility that Bridgestone distributes its products via its various subsidiaries. Even if its subsidiaries and retailers sell their own or other brands of tires, the volume of Bridgestone tires and

literature on its tires present in Texas illustrates some conscious strategy to place Bridgestone products in the United States via its subsidiaries. This is sufficient to warrant further discovery on this issue. In addition, evidence further suggests that Bridgestone's presence in Texas is not fortuitous but intentional. In various sections of its Annual Report, Bridgestone describes itself as an international company and a tire-industry leader. In one section of the Bridgestone 1996 Annual Report entitled "The Americas," Bridgestone writes that its:

> Firestone brand has become a genuine leader in the mainstream segment of the North American tire market. The Bridgestone brand, meanwhile, is a powerful contender in the premium-quality segment....
>
> We have used our complementary brands to cement closer ties with dealers throughout North America. We also continue to broaden our marketing presence through a large volume of private-brand and house brand business with leading retailers, such as Sears and Montgomery Ward.

The 1999 Annual Report goes on to further describe Bridgestone's strategy to increase its presence in North America via its multi-brand strategy centered on the Bridgestone, Firestone, and Dayton brands of tires.

A review of the evidence, even at this early stage of discovery, shows that Bridgestone is a corporation devoted to selling tires-its own official brand and the tires developed by its subsidiaries-throughout the world, North America, and Texas. The evidence further suggests that in order to achieve this goal, Bridgestone has established a network of subsidiaries including Firestone to import its products into important markets around the globe, including Texas. Though

Bridgestone and Firestone observe the requisite corporate formalities, Firestone and other subsidiaries essentially connect Bridgestone to markets in Texas. The instance case is factually very similar to *Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707 (Tex.App.-Austin 2000), *pet. stricken by,* 53 S.W.3d 308, 2000 WL 1508842 (Tex. Oct.12, 2000). *Daimler–Benz* involved a foreign parent corporation that was devoted to selling its luxury cars worldwide, including in Texas, and that had subsidiaries in important markets around the world. *Id.* at 722, 720–22. The Court of Appeals held that, though the parent and subsidiary observed corporate formalities, Texas had personal jurisdiction over the foreign parent corporation because the parent corporation and its subsidiary formed a "functional whole in promoting and marketing vehicles in Texas." *Id.* at 723. The Court of Appeals's holding in *Daimler–Benz* strongly suggests that Bridgestone has had sufficient contacts with Texas so as to justify the exercise of personal, general jurisdiction over Bridgestone. Accordingly, the Court finds that Bridgestone fails to establish that Plaintiffs could not establish personal jurisdiction over Bridgestone under an alter ego theory.

### b. Foreseeability and the Stream of Commerce Theory

In addition to the alter ego and/or functional whole theory, a Texas court could reasonably find personal jurisdiction based on foreseeability and a stream of commerce theory. Here, the unique procedural posture of this case is significant. Where the Fifth Circuit and Texas courts have disagreed on the boundaries and application of the stream of commerce doctrine, this Court must follow the holding of Texas courts because the analytical framework for fraudulent joinder is what are the reasonably possible decisions a Texas

court might make. For instance, the Fifth Circuit has expressly rejected a the stream of commerce theory as a basis for establishing general jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir.1987). However, Texas courts have not yet expressly adopted such a rule. In fact, at least one case has found general jurisdiction over a foreign corporation based in part on a stream of commerce theory. *Daimler–Benz*, 21 S.W.3d at 718, 726. In *Daimler–Benz*, the plaintiff was injured by a car allegedly designed by a foreign corporation. The Court of Appeals noted that the car involved in the plaintiff's injury was a car not designed, manufactured, or exported to the U.S. by foreign corporation; rather, the particular car involved was intended for export to the European and not U.S. market. *Id.* at 718. The Court of Appeals nonetheless found that Texas had general jurisdiction over the foreign corporation based in part on the evidence showing that the foreign corporation placed a substantial number of its other vehicles into the stream of commerce destined for the United States and Texas. *Id.* at 726.

In addition, Defendants' reliance on *Bearry* is misguided. Though the Fifth Circuit found that Texas did not have general jurisdiction over Beech Aircraft, the San Antonio Court of Appeals has since revisited *Bearry* and has found that Beech Aircraft is now subject to general jurisdiction in Texas. *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 773 (Tex.App.-San Antonio 1999, writ dism'd w.o.j.). The San Antonio Court of Appeals distinguished *Jones* from *Bearry* by noting the close relationship between Beech and its subsidiaries (which do business in Texas) and Beech's internet website, both which allow it to solicit sales in Texas. *Id.* at 771, 773. These two facts are present in the instant case.

■■■■ Although foreseeability is a factor to be considered in the minimum contacts analysis, foreseeability alone cannot establish personal jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). The non-resident defendant must "take some action '*purposefully directed* toward the forum state.'" *Id.* (*quoting Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). The mere placement of its product into the stream of commerce with an awareness that the product will eventually end up in Texas does not constitute action purposefully directed toward the forum state. *Id.* A purpose to serve the Texas market, however, may be established by such conduct as marketing a product through distributors who have agreed to serve as the sales agent in Texas or establishing channels to provide regular advice or information to customers in Texas. *CMMC*, 929 S.W.2d at 438.

■■■ Under the Texas view of the stream of commerce doctrine: "a defendant has 'purposefully availed itself of the privilege of conducting activities' in the forum state if the non-resident defendant sells its product to an independent distributor and 'there is a reasonable expectation that the product will enter the forum state.'" *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex.1985) (*quoting Oswalt v. Scripto, Inc.*, 616 F.2d 191, 201 (5th Cir.1980)) (holding that a foreign steel manufacturer that confirmed orders for four million dollars of steel annually to be shipped Texas had sufficient minimum contacts to be amenable to suit in Texas); *see also CMMC*, 929 S.W.2d at 439 (confirming the applicability of the "reasonable expectation" factor first stated in *Kawasaki* to the stream of commerce doctrine post-*Asahi Metal*). A defendant's delivery of its product into the stream of commerce with the reasonable expectation that

the product will enter Texas will generally satisfy the minimum contacts requirements. *Kawasaki,* 699 S.W.2d at 201.

Here, Plaintiffs present sufficient evidence to establish that a Texas court could reasonably find personal jurisdiction over Bridgestone under the foreseeability and stream of commerce doctrine. Though it may not have its own "official" Bridgestone retailers in Texas, Plaintiffs submitted evidence that advertisements for Bridgestone and its products appears in phone books, in newspapers, at local tire retailers, and television commercials throughout Texas. Bridgestone brand tires are readily available at tire retailers throughout Texas. The Bridgestone corporate logo with the slogan "A Grip of the Future" are openly apparent at these same retailers. Rather than being an isolationist minded manufacturer who through happenstance finds its product in Texas, the evidence raises the possibility that Bridgestone has advertised, marketed, and sold its products in Texas, through its subsidiaries, so as to purposefully avail itself of the benefits of Texas law. As stated above, Bridgestone is a international corporation with the intention and desire to service all major tire markets of the world, including Texas. Plaintiffs sufficiently support their argument that as part of this global strategy, Bridgestone makes pamphlets on tire care, safety, and general product information readily available to Texas users of Bridgestone products at Firestone and other tire retailers. Much like the foreign parent corporation in *Daimler–Benz,* beyond merely putting its tires into the stream of commerce, Bridgestone has developed a strategy and distribution network to bring its tires to Texas. A Texas court could plausibly find that such actions are purposefully directed at Texas.

### c. Internet Web Site with E-mail

As do most international and national corporations, Bridgestone operates an Internet website by which persons around the world, including persons in Texas, can communicate with Bridgestone. The website's address is <<*http://www2.bridgestone.co.jp*>>. The Bridgestone web site offers visitors extensive information about Bridgestone and the Bridgestone family of corporations such as Firestone, its history, its annual reports, and its products. One subdirectory entitled "Contact Us" allows visitors to submit their name, postal address, and e-mail as well as questions or comments to Bridgestone. Visitors wishing to contact Bridgestone concerning its North and Latin American operations are hyper-linked to the contact page of the Firestone site.

■ For the purposes of personal jurisdiction, Texas law divides Internet sites and activities into three categories of interaction. On one end of the scale, defendants who use the Internet to make contacts with residents in other jurisdiction and to repeatedly and knowingly transmit computer information are said to be doing business over the Internet and are subject to personal jurisdiction in Texas. *Daimler–Benz,* 21 S.W.3d at 724; *Jones,* 995 S.W.2d at 773. On the other end are defendants who merely establish passive web sites that simply make information available. Texas does not have personal jurisdiction over non-resident defendants who merely establish passive web sites. In the middle are web sites that allow users to exchange information and to communicate with the corporation. *Daimler–Benz,* 21 S.W.3d at 724.

■ Bridgestone's web site falls in the middle category. It allows Texas residents to submit comments and questions to Bridgestone. It does not, however, allow Texas residents to directly purchase

Bridgestone brand tires. While this level of interaction is insufficient by itself to establish personal jurisdiction over Bridgestone, it may be considered as contact, along with the other contacts that exist in this case. *Id.* at 725 (considering the web site operated by foreign corporation, which is similar to Bridgestone's web site in the minimum contacts inquiry); *Jones,* 995 S.W.2d at 773 (recognizing that an interactive website that allows visitors to e-mail the company may be considered in the minimum contacts inquiry).

Without actually deciding the merits of the minimum contacts issue, the Court finds that, in the very least, the contacts that Bridgestone has had, either directly or through its subsidiary Firestone, are not so lacking that the issue of personal jurisdiction is a foregone conclusion.

### 2. Traditional Notions of Fair Play

Even if a defendant has established minimum contacts with the forum state, a Texas court may still dismiss the suit for lack of personal jurisdiction if maintaining it violates traditional notions of fair play and substantial justice, that is, if it is unfair or unreasonable. *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Courts will generally examine this reasonableness prong of the federal due process test by looking at five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Bridgestone's significant contacts with Texas, whether directly or indirectly, and its own goal to increase its market presence in North America including Texas lessen the burden on it to defend suit in Texas. In addition, as indicated by their choice to bring their suit in Texas, Plaintiffs have a significant interest in obtaining convenient and effective resolution of their claims. Plaintiffs submit evidence sufficient to support an argument that Bridgestone places a large volume of its tires into the stream of commerce destined for the United States and Texas. The policy interests of federal government are not hindered by Texas's exercise of personal jurisdiction over Bridgestone. *Daimler–Benz,* 21 S.W.3d at 726 ("The federal government's foreign policy interests are not hindered when individual states ensure that large international companies operate in an equitable business environment in which wrongs are redressed by those responsible.").

Accordingly, the Court finds that Defendants fail to show a Texas court could not possibility find personal jurisdiction over Bridgestone. Again, the Court emphasizes that, for the purpose of the fraudulent joinder inquiry, the Court must determine only whether Defendants have established that there is no reasonable possibility that a Texas court could find that it has personal jurisdiction over Bridgestone. When the question of personal jurisdiction is finally determined on its merits, it is possible that a Texas court would find that it is without personal jurisdiction over Bridgestone. However, like summary judgment, fraudulent joinder only asks this Court to determine whether there is sufficient evidence and law to allow the issue of personal jurisdiction to decided on its merits.

### B. Merits of the Plaintiffs' Causes of Action against Bridgestone

By their First Amended Complaint, Plaintiffs allege that Bridgestone,

"developed, designed, manufactured, inspected, distributed, and sold" the Firestone brand tires, which were involved in the injury-causing accidents. Plaintiffs further allege that Bridgestone breached its duty of reasonable care owed to Plaintiffs by several acts or omissions including negligently testing and inspecting or failing to test the tires, negligently warning or failing to warn Plaintiffs of the defects that Bridgestone either knew or should have known existed and negligently warning or failing to warn Plaintiffs of the signs of tread belt separation. Plaintiffs further allege a cause of action based on strict liability against Bridgestone based on its role in the development, design, manufacture, distribution and sale of the defective tires, which were allegedly unfit and unsafe for its intended uses and purposes.

Bridgestone asserts that it was not involved in the design, manufacture or sale of the tires involved in this case nor did it introduce the alleged defective tires into the stream of commerce. Bridgestone emphasizes that its alleged involvement in the design, manufacture, and/or sale of the particular tires involved is based only on Plaintiffs' bare, conclusory, and unsupported allegations. Bridgestone contends, therefore, that it is not liable under Texas law for any injury suffered by Plaintiffs. *Firestone Steel Products Co., v. Barajas,* 927 S.W.2d 608, 614, 613–14 (Tex.1996) ("Under traditional products liability law, the plaintiff must prove the defendant supplied the product that caused the injury.").

It is helpful to briefly discuss summary judgment under Texas law in order to ascertain whether a Texas court could find that Plaintiffs could maintain a cause of action against Bridgestone. Under the Texas laws governing summary judgment, a party may move for a summary judgment on the grounds that there is no evidence of one or more essential elements of

a claim *only after there has been adequate time for discovery.* TEX. R. CIV. P. 166a(i) (emphasis added); *Aguirre v. Phillips Props. Inc.,* No. 13–00–426–CV, 2001 WL 961337 (Tex.App.-Corpus Christi 2001,no writ history) (slip opinion). Rule 166a(c) of the TEXAS RULES OF CIVIL PROCEDURE states that ordinary summary judgment is proper if:

> (i) the deposition transcripts, interrogatory answers, and other discovery responses ... and (ii) the pleadings, admissions, affidavits, stipulations of parties, and authenticated or certified public records, if any, on file at the time of the [summary judgment] hearing ... show that ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion.

Bridgestone fails to carry its burden of proving that there is no possibility that Plaintiffs can state a cause of action against Bridgestone under Texas law. In attempting to establish fraudulent joinder, Defendants necessarily argue that Plaintiffs cannot support their bare and conclusory allegations. This argument may eventually prove true. However, Plaintiffs submit some evidence including the deposition of a former Firestone employee concerning Bridgestone's involvement in developing and shaping Firestone's quality and safety guidelines. Though this evidence is sparse, it is sufficient to support its factual allegations and at this early stage of the litigation, the Court is reluctant to cut off Plaintiffs' right to discovery.

██ At this early stage of litigation and with only limited discovery conducted, the Plaintiffs' factual allegations including the alleged involvement of Bridgestone in the design, manufacture, and sale of the tires must be read in the light most favor-

able to Plaintiffs and all contested facts must be resolved in favor of Plaintiffs. *Jernigan*, 989 F.2d at 816. The Court recognizes that both parties are handicapped by the lack of adequate discovery. However, fraudulent joinder is not a means of circumventing the discovery period normally afforded to the parties before summary judgment may be brought. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir.1995) (cautioning against pretrying a case to determine removal jurisdiction).

Accordingly, the Court finds that Bridgestone has not met its heavy burden for proving fraudulent joinder. The lack of discovery is not the fault of Bridgestone; it is an unfortunate reality faced by all defendants attempting to prove fraudulent joinder: that in time a defendant may be able to win the dismissal of a plaintiff's claims based on the insufficiency of evidence; however, time enough for discovery is simply something that the issue of jurisdiction and fraudulent joinder does not provide.

### 1. The Possible applicability of Mexican or Venezuelan Law

 Defendants argue that under Texas's choice of law analysis, a Texas court would apply Mexico or Venezuela law to Plaintiffs' claims against the various defendants. Defendants further assert that under these foreign laws Plaintiffs have no cause of action against Bridgestone, Firestone, Del Rio, and/or Smithers. This may eventually prove true. However, the complexity of facts involved in this case, the question of whether a Texas court would find that foreign law applied under Texas's choice of law rules, the uncertainty as to the viability of Plaintiffs' claim under Mexico law as applied by a Texas court, and the effect of Texas's own procedural laws all preclude the Court from finding that Plaintiff's cannot state a cause of action

against Bridgestone in a Texas court. *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 181 (5th Cir.2000) (holding that fraudulent joinder was not proven in light of the various unresolved issues including the how a Texas court would apply foreign law and the unclear apportionment of liability among the defendants). These ambiguities in the controlling substantive law and as to whether and how they will be applied must be resolved in favor of Plaintiffs. *Burchett*, 48 F.3d at 176 ("[t]he district court must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff.").

### CONCLUSION

The Court finds that, given the above analysis and the standards that must be followed, Bridgestone has not been fraudulently joined in this case. Accordingly, since all the Plaintiffs are either Mexican or Venezuelan citizens and Bridgestone is a Japanese corporation, there is no diversity because alien parties exist on both sides of the controversy. *See Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1152 (5th Cir.1985); 14A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3661 n.6 (3rd ed. 1998) ("Diversity jurisdiction may not be involved in a suit between individual alien and an alien corporation."). Since the presence of Bridgestone is sufficient to negate diversity jurisdiction, the Court does not address the issue of whether Del Rio and Smithers have also been fraudulently joined in the litigation.

It is therefore ORDERED that Defendant Bridgestone's Motion to Stay is DENIED.

It is further ORDERED that Plaintiff's Motion to Remand is GRANTED.

It is further ORDERED that Plaintiff's Motion for Sanctions is DENIED.