**Vernell SAGO, et al., Plaintiffs,**

**v.**

**WAL–MART STORES, INC., et al., Defendants.**

**No. CIV.A. 3:03CV536BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 2, 2003.

Chokwe Lumumba, Chokwe Lumumba, Attorney, Delano Funches, Funches & Associates, Jackson, for Vernell Sago, Carolyn Vance, Debra A. Sherrod, Quinton Sparks, Trina Johnson, Shannon Jordan, Tomeka Ervin, Sandra Miller, Tina Butler, Hazel Hinton Lewis, Brenda Brown, Patricia M. Leblance, Samantha Hausley, Claude Ware, Marcus Stanley, Tracey Scott, Tommy Warren, David Wilson, Fellicia Primo, Frederick Lee, Sernia Wallace, Royce Smith, Jr., Sammie Dudley, Earnestine Evans, James Gilliard, Roy Green, Latoya Flowers, Arvin Williams, Shunla May, James Tatum, Willie M. Choffier, Willie E. Maxwell, Jennifer R. Goggin, Termice R. Thomas, Kerry C. Young, Ryan Bennett, Peggie H. Harten, Shemela Johnson, Sonja Simmons, Billy Johnson, Sherrelynn Ruch, Craig Carey, Gloria Edwards, Denise Hine, Juanita Brown, Sylvia Ransey, David Branch, Ava Smith, Stanley Banks, Shelia Coleman, Kristie L. Mullin, Lizzie M. Henderson, Martha L. Johnson, Michael McGiggo, Joshua L. Mitchell, Jo Ann Evans, Barbara Miller, Leigha Hughes, Maxine Scales, Jacinta James, Shanda S. Claiborne, Tiffany C. Lockhart, Jacqueline R. Brunson, Vernetta Worthy, Felicia Phillips, Keytha Campbell, Kesha Conner, Kristin Viscione, Richard Vis-

cione, Helen Crosby, Curtis Bolton, Angela Brown, Vincent Merrill, Seleatha McGee, Brandi S. Christman, Sylvia M. Harris, Tanze Burnley, Jennifer Knight, Dorothy M. Brown, Alice Abram, Diana Berry, Ryan C. Jones, Daphine Davis, Christopher Benson, Lisa R. Weaver, Michael Rule, Torran Cobbs, Sim Norwood, Tonya Dickey, Theresa Craig, Stephanie Tinsley, Brenda Simpson, Sylvia Hutcheson, Philip Wilkens, Carrie L. Turner, Xavier T. Hughes, Betty Brunson, Roosevelt Powell, Lejulian Evans, Brandon Anderson, Christopher Forte, Johnny Brown, Jr., Denise Williams, Joseph Crawford, John McDonald, Shannon Jordan, plaintiffs.

Walter J. Brand, Kenneth E. Milam, Amy Camille Felder, Watkins & Eager, Jackson, Edward Blackmon, Jr, Blackmon & Blackmon Law Firm, Canton, for Wal-Mart Stores, Inc., Sam's Club, Brad Sullivan, Steve Haynes, Bobby Shumpert, Daniel Patterson, Steve Billino, Tracey Dickerson, Ken Herring, Andy Lofton, Pepo Rodrigues, Jim Webster, Dexter Long, Barry Herndon, Dave Henley, Rodney Walker, Michael Parrot, Charles Ross, Adrian Coker, Jim Leggett, Charles Roe, Tarous Rice, John Antoon, Earl Alsobrooks, Sean Copeland, Bo Shell, Joe Carter, Roger Washington, Veronica Hartfield, Thomas M. Parrot, Leland Newman, Jimmy Palmer, Lou Schuler, Matt Ohallian, Tim Malone, Joe Johnson, Jim Sarrell, Rolland Dixon, Don Lambert, Andy Hardin, Angie Clark, Lonnie Lucas, Michael Lewis, Mike Evans, Len Noven, Lou Weddington, Robert Hawkins, Bo Kirby, Dave Henerson, Mark Elleraton, Ken Ross, Steve Burks, Airfonzie Petterson, Margaret Foster, Lonnie Luke, Mark Ellington, Charles Roe, Sr., Charles Coleman, defendants.

***OPINION AND ORDER***

BARBOUR, District Judge.

This cause is before the Court on the following Motions:

1) Motion of Plaintiffs to Remand (filed April 6, 2003);

2) Motion of Plaintiffs for Additional Time to Serve Process on Defendants (filed August 12, 2003);

3) Motion of Defendants to Quash Improper Service of Process (filed August 6, 2003);

4) Motion of Defendants to Dismiss for Lack of *In Personam* Jurisdiction, Insufficient Service of Process and Insufficient Process (filed August 21, 2003); and

5) Motion of Defendants' to Strike Plaintiffs' Rebuttal Brief in Support of Their Motion to Remand (filed August 28, 2003).[1]

Having considered the Motions, Responses, Rebuttals, attachments to each, and supporting and opposing authority, the Court finds that the Motion of Plaintiffs to Remand is well taken and should be granted. Because the Motion to Remand is granted herewith, the following Motions must be denied without prejudice for lack of this Court's jurisdiction to render a decision on them:

1) the Motion of Plaintiffs for Additional Time to Serve Process on Defendants;

2) the Motion of Defendants to Quash Improper Service of Process; and

---

**1.** The Court notes that Defendants filed with the Clerk of the Court a pleading titled Response to Motion of Plaintiffs to Consolidate. However, no Motion to Consolidate has been filed with the Clerk of the Court. Therefore, the Motion to Consolidate which was apparently served on Defendants but not filed with the Clerk of the Court, is not properly before the Court, and is not considered herewith.

3) the Motion of Defendants to Dismiss for Lack of *In Personam* Jurisdiction, Insufficient Service of Process and Insufficient Process.

The Court further finds that the Motion of Defendants' to Strike Plaintiffs' Rebuttal Brief in Support of Their Motion to Remand is not well taken and should be denied.

## I. Background and Procedural History[2]

The one-hundred and five Plaintiffs in this cause of action are or were employees of either Defendant Wal–Mart Stores, Inc. (hereinafter "Wal–Mart") or Defendant Sam's East, Inc. (hereinafter "Sam's")[3]. Wal–Mart and Sam's are occasionally collectively referenced as the "corporate Defendants" in this Opinion. In addition to the two corporate Defendants, Plaintiffs sued fifty-two individual Defendants, who were all allegedly managers of the corporate Defendants. Plaintiffs allege that they were not properly compensated for the hours that they worked for the corporate Defendants. In summary, Plaintiffs contend *inter alia* that Defendants either: (1) manipulated their time sheets, resulting in payment for less hours than Plaintiffs actually worked; or (2) required Plaintiffs to work "off of the clock," also resulting in payment for less hours that Plaintiffs actually worked. The facts of the case are further developed below in the Analysis section of this Opinion.

Plaintiffs filed the subject suit in the Circuit Court of Holmes County, Mississippi, on December 31, 2002. The Claims in the Complaint are:

Count One: Intentional Interference with Contractual Rights
Count Two: Conversion
Count Three: Fraud
Count Four: Fraudulent Concealment
Count Five: False Imprisonment
Count Six: Civil Conspiracy
Count Seven: Breach of Contract.

Plaintiffs seek an unspecified amount of both actual and compensatory damages. Defendants removed the case to this Court on April 16, 2003. The basis for removal in the original Notice of Removal is diversity of citizenship under 28 U.S.C. § 1332. The Corporate Defendants allege that the fifty-two individual Defendants were fraudulently joined, thus complete diversity exists between the Plaintiffs, who are all Mississippi residents, and the corporate Defendants, who are residents of both Arkansas and Delaware. Defendants filed an Amended Notice of Removal on May 6, 2003, alleging that in the alternative, this Court has bankruptcy jurisdiction over the case because several of the Plaintiffs are or have been involved in bankruptcy proceedings. Plaintiffs' Motion to Remand is now ripe for consideration by the Court.

## II. Analysis—Motion to Remand

### (A) Fraudulent Joinder Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court

---

**2.** The facts stated in this section of the Opinion and Order were generated from numerous pleadings submitted by the parties. By including the facts herewith, the Court is not attesting to their accuracy or their truth.

**3.** Sam's was incorrectly named in the Complaint as Sam's Club, Inc.

has jurisdiction to hear the case. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin*, 882 F.2d at 190. To establish fraudulent joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir.1999).

■ When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995). Under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000).

■ In *Travis*, the United States Court of Appeals for the Fifth Circuit reiterated the standard by which a plaintiff's claims must be analyzed to determine the fraudulent joinder question. The *Travis* court held:

[T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable*, not merely theoretical.

*Travis*, 326 F.3d at 648 (emphasis in original) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. *Badon*, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." *Id.*

■ When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992), but "*only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon*, 224 F.3d at 394 (emphasis in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan*, 989 F.2d at 816.

## (B) Analysis—Fraudulent Joinder

Diversity of citizenship jurisdiction requires satisfaction of the following two factors: (1) amount in controversy; and (2) diversity of citizenship. These requirements are set forth in 28 U.S.C. § 1332(a), which states in relevant part "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States...." The subject Complaint does not specify a dollar amount of damages sought by Plaintiffs. However, the Notice of Removal alleges an amount in controversy exceeding $75,000, and this allegation is not denied by Plaintiffs. Based on Plaintiffs' silence on the amount in controversy issue, and based on the nature of the subject claims, the Court finds that the amount in controversy requirement of § 1332(a) is met. The issue to be resolved is whether the fifty-two non-diverse individual Defendants were fraudulently joined.[4]

The individual Defendants were allegedly managers at various Wal–Mart or Sam's stores at which Plaintiffs were employed throughout Mississippi. As managers at Wal–Mart and Sam's, Plaintiffs contend that the individual Defendants incurred individual liability for the claims alleged in the Complaint. In the following analysis, the Court considers the potential liability of the individual Defendants under count one of the Complaint, which is interference with contractual relations. Because the Court finds herewith that the individual Defendants *may* be liable under Mississippi law for claims in count one, the remaining six counts in the Complaint need not be analyzed.

To determine whether the individual Defendants interfered with the contractual relationships between Plaintiffs and the corporate Defendants, the Court must first determine whether a contract existed. Based on the following analysis, the Court finds that at a minimum an implied contract existed between the Plaintiffs and the corporate Defendants. If a person works for another with the reasonable expectation of payment, then the law implies a contract to pay for the services rendered. *In re: Estate of Stewart,* 732 So.2d 255, 259 (Miss.1999) (citations omitted); *Redd v. L & A Contracting Co.,* 246 Miss. 548, 151 So.2d 205, 209 (1963) (citation omitted). An implied contract "has the same legal effect as an express contract." *Franklin v. Franklin,* No. 2001–CA–01218–SCT, 2003 WL 327708 at *8 (Miss. Feb.13, 2003) (citations omitted).

■ In the subject case, Plaintiffs performed work for the corporate Defendants for which they reasonably expected compensation. The Court therefore finds that an implied contract existed, at least to the extent that the corporate Defendants are contractually obligated to compensate the Plaintiffs for the hours that they worked.[5] The Court next considers whether a Mis-

---

**4.** Plaintiffs also sued unidentified "John Does 1—1000. Under 28 U.S.C. § 1441(a), "[f]or purposes of removal...the citizenship of defendants sued under fictitious names shall be disregarded." Based on the provisions of § 1441(a), the Court must disregard any arguments pertaining to the "John Doe" Defendants.

**5.** The corporate Defendants appear to be arguing that there could be no contractual rela-

tionship of any kind with the Plaintiffs because they were "employees at will" under Mississippi law. The Court reaches the conclusion above without finding that the implied contract is anything more than an employment at will contract. However, even under an employment at will contract, the employer is obligated to compensate the employee for work already performed.

sissippi state court *may reasonably* find that the individual Defendants interfered with Plaintiffs' contractual relationships with the corporate Defendants.

In *Morrison v. Mississippi Enter. for Tech., Inc.*, 798 So.2d 567, the Mississippi Court of Appeals provided a detailed analysis of whether a supervisor can be held responsible for tortious interference of a contract between one who is supervised, and a third party. The *Morrison* court's analysis follows.

> Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. *Shaw v. Burchfield*, 481 So.2d 247, 254–55 (Miss.1985). **Tortious interference even with at-will employment can be the basis of a claim.** *Levens v. Campbell*, 733 So.2d 753 (Miss. 1999).

> However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent **bad faith**, to interfere with his principal's contractual relationship with a third person." *Shaw*, 481 So.2d at 255.

> \* \* \* \* \* \*

> First, bad faith raises an issue of motive. It is not necessary for direct evidence to exist, such as an admission by the defendant that he acted in bad faith. Instead, such a conclusion generally arises as an inference from other evidence. The conclusion, though, must be that the actor was malicious or recklessly disregarding the rights of the person injured.

> How "bad faith" adds meaningfully to this tort is initially somewhat confusing. In order to prove tortious interference with a contract, a plaintiff must normally show these elements:

>> 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred.

> *Levens*, 733 So.2d at 760–61. The Court also said that a "cause of action for tortious interference with a contract generally will lie against one who maliciously interferes with a valid and enforceable contract." *Id.* at 759–760. Does "bad faith" require that *more* be proven than the four normal elements of the tort?

> \* \* \* \* \* \*

> We find that the "privilege" is merely a specific example of having "right or justifiable cause" to interfere with the relationship. Tortious interference is based on intermeddling-a tort occurs if *without sufficient reason*, one person intentionally interferes with another's contract even if the interference is by giving information that is completely accurate, when the purpose was to cause interference and injury results. The earliest statement of the elements of the tort suggests the connection between bad faith and the general operation of the tort:

>> (1) that the acts were intentional and wilful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or **justifiable cause** on the part of the defendant (which constitutes malice [or bad faith]); and (4) that actual damage and loss resulted.

*Irby v. Citizens Nat'l Bank of Meridian,* 239 Miss. 64, 121 So.2d 118, 119 (1960) (parenthetical in original).

*Morrison v. Mississippi Enterprise For Technology, Inc.* 798 So.2d 567, 574–75 (Miss.Ct.App.2001) (italicized emphasis in original; bolded emphasis added).

Based on the holding in *Morrison,* the Court finds that if the individual Defendants had no *justifiable cause* for the alleged tampering with Plaintiffs' time sheets or the alleged requirement that Plaintiffs work "off the clock," then a reasonable possibility exists that a Mississippi state court could hold the individual Defendants liable for Plaintiffs' intentional interference with contract claim.[6] The Court can conceive of no possible scenario under which a supervisor could justifiably require employees to work while clocked out, and/or for a supervisor to tamper with the time sheet of an employee. The Court therefore finds that a Mississippi state court could find that the individual Defendants are liable to Plaintiffs for the intentional interference with contract claim. Accordingly, the Court finds that Defendants' fraudulent joinder argument does not provide a basis to deny Plaintiffs' Motion to Remand.

### (C) Analysis—Bankruptcy Jurisdiction

Defendants argue that this Court has bankruptcy jurisdiction over the case pursuant to 28 U.S.C. § 1334 because several of the Plaintiffs are, or have been involved in bankruptcy proceedings.

Defendants argue that Plaintiffs' claims represent proceedings for which this Court should exercise jurisdiction under 28 U.S.C. § 1334(a), which states in relevant part that "the district court shall have original and exclusive jurisdiction over all cases under title 11," or under § 1334(b), which states in relevant part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or relating to cases under title 11." The Court disagrees.

The principles of mandatory abstention are set forth in 28 U.S.C. § 1334(c)(2), which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

To determine whether the mandatory abstention provisions of § 1334(c)(2) apply, the Court must first determine whether Plaintiffs' causes of action in this case represent "core" bankruptcy proceedings.[7] In *In re: Southmark Corp.,* 163 F.3d 925 (5th Cir.1999), the United States Court of Appeals for the Fifth Circuit analyzed

---

**6.** The Court notes that Plaintiffs presented sufficient evidence of interference of contract to survive dismissal of the claim at this stage of the proceeding. Five Plaintiffs submitted affidavits to the effect that their supervisors asked them to work while clocked out, and/or tampered with their time sheets. Plaintiffs' Reply to Defendants' Response in Opposition to Plaintiffs' Motion to Remand, Exhibits "A" through "E," Affidavits.

**7.** 28 U.S.C. § 157(b)(2) provides a *non-exclusive* list of proceedings that are core proceedings. Because Plaintiffs' causes of action do not fall under the purview of any of the proceedings listed in § 157(b)(2), the Court must analyze case law to determine whether the claims are core proceedings.

whether the federal district court in issue should have abstained from exercising jurisdiction over a bankrupt's state law claim of professional (accounting) malpractice. The *Southmark* court analyzed as follows:

> But what the court can do with its jurisdiction depends first on whether the malpractice case is a "core" bankruptcy matter or one that is "related to" Southmark's reorganization case. If the suit against Coopers [the accountant] is merely "related to" bankruptcy, the bankruptcy court was required to abstain from hearing it. 28 U.S.C. § 1334(c)(2). If, however, the controversy lies "at the core of the federal bankruptcy power," *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 2870–71, 73 L.Ed.2d 598 (1982), the bankruptcy law permits but does not require abstention. 28 U.S.C. § 1334(c)(1).

*Id.* at 928–29 (footnotes omitted). Based on the *Southmark* holding and on the provisions of § 1334(c)(2), this Court *must* abstain from exercising jurisdiction over the subject case if Plaintiffs' claims are non-core proceedings under bankruptcy law. The *Southmark* Court continued by providing guidance on what constitutes a core proceeding.

█ In defining the scope of a "core proceeding," the *Southmark* court cited the holding in *In re: Wood,* 825 F.2d 90 (5th Cir.1987). *Wood* involved a claim against a debtor over shares of stock acquired by the debtor after the petition in bankruptcy was filed. There the court held that

a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. The proceeding before us does not meet this test and, accordingly, is a non-core proceeding. The plaintiff's suit is not based on any right created by the federal bankruptcy law. It is based on state created rights. Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court. *Id.* at 97 (footnote omitted).

*Southmark,* 163 F.3d at 930. In Summary, the court held that if a claim is based on state law and the claim could arise outside of the context of a bankruptcy proceeding, then it is not a core proceeding. This Court is bound by the holdings in *Southmark.*[8] Plaintiffs' claims in this case do not relate to their bankruptcy proceedings, the claims could have been brought outside of the scope of bankruptcy law, and the claims are premised on state law. Therefore, the Court finds that Plaintiffs' claims in this suit are non-core proceedings.

█ Finally, the Court must consider whether the five part test for mandatory abstention is met.

For mandatory abstention to be invoked, the following conditions must exist:

1. A motion has been timely filed requesting abstention.

---

8. The *Southmark* court found that the debtor's malpractice claim was a core proceeding. However, the facts in *Southmark* are clearly distinguishable from the facts in this case. The debtor's professional malpractice claim in *Southmark* was against an accountant who was appointed by the bankruptcy court, in relation to the debtor's Chapter 11 reorganization case. As such, the claim arose out of, or was sufficiently related to the debtor's bankruptcy proceeding to fall under federal bankruptcy jurisdiction. In the subject case, Plaintiffs' claims do not arise out of their bankruptcy proceedings.

2. The cause of action is essentially one that is premised on state law.

3. The proceeding is non-core or related to the bankruptcy case.

4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case.

5. The proceeding has already been commenced and can be timely adjudicated in a state court forum.

*In re McCray,* 209 B.R. 410, 414 (Bankr. N.D.Miss.1997).

*Blakeley v. United Cable Sys.,* 105 F.Supp.2d 574, 582 n. 9 (S.D.Miss.2000). All of these factors are met in this case. A timely Motion to Remand was filed with this Court, which is reasonably construed as a request for abstention. Plaintiffs' causes of action are premised on state law. As analyzed above, Plaintiffs' causes of action in this case are non-core proceedings. This case could not have been commenced in this Court absent the existence of Plaintiffs' bankruptcy case. Finally, the subject case has already been commenced in state court, and the case can be adjudicated in state court in a timely manner. Because all five of the factors for mandatory abstention are met, the Court finds that it is barred from exercising bankruptcy jurisdiction over the subject case.

 Defendants further argue that this Court *must* exercise bankruptcy jurisdiction over the subject case pursuant to 28 U.S.C. § 1334(e) "because the claims asserted here are still property of the respective bankruptcy estates of the Debtor Plaintiffs...." Defendants' Memorandum Brief in Support of their Response in Opposition to Plaintiffs' Motion to Remand, p. 32. Section 1334(e) states "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

The Court disagrees with Defendants' argument on the § 1334(e) issue. In *Lee v. Miller,* 263 B.R. 757, 760–62 (S.D.Miss. 2001) (J. Wingate), this Court held that the provisions of § 1334(e) do *not* preclude abstention and remand under § 1334(c). In the event that the Court is incorrect, and § 1334(e) precludes *mandatory* abstention, then the Court opts to decline the exercise of jurisdiction under the *discretionary* abstention provisions of § 1334(c)(1). *See generally, id.* at 762–63.

 According to the principles of discretionary abstention, the Court is permitted to abstain from hearing a case arising under title 11 where abstention is in the interest of justice, comity with state courts, or respect for state laws. 28 U.S.C. § 1334(c)(1). In *Searcy v. Knostman,* 155 B.R. 699, 710 (S.D.Miss.1993), the court set forth a non-exclusive list of fourteen factors that may be considered in determining whether to exercise discretionary abstention. These factors are:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention;

(2) extent to which state law issue predominate over bankruptcy issues;

(3) difficulty or unsettled nature of the applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to

allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*Id.* (citing *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir.1990); *Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.*, 130 B.R. 405, 407–08 (S.D.N.Y.1991); and *Western Helicopters, Inc. v. Hiller Aviation, Inc.*, 97 B.R. 1, 2 (E.D.Cal.1988)).

Without the need for a detailed analysis of the fourteen factors set forth in *Searcy*, the Court finds that a large majority of the factors support abstention. Accordingly, discretionary abstention from the exercise of jurisdiction in this case is clearly warranted, and this case must be remanded to state court.

### III. Analysis—Motion to Strike

■■■ Defendants filed a Motion to Strike Plaintiffs' Rebuttal Brief in Support of Their Motion to Remand. In the Motion, Defendants argue that "the Court should strike Plaintiffs' rebuttal and accompanying affidavits on the grounds that they are untimely, improperly filed, and exceed the page limitation." Motion to Strike, p. 3. The Court finds that Defendants were not prejudiced by any aspect of the Rebuttal. The untimely nature of the Rebuttal did not cause Defendants to miss any time limitation established in the Case Management Order. The affidavits attached to Plaintiffs' Rebuttal were merely responsive to arguments presented in Defendants' Response to the Motion to Remand. Finally, the combined total pages of Plaintiffs' Memorandum in Support of Motion to Remand and Plaintiffs' Rebuttal Memorandum was only twenty-two pages, significantly less than the thirty-five pages allowed by the Local Rules. For these Reasons, Defendants' Motion to Strike should be denied.

### IV. Conclusion

Based on the holdings presented above, the Court finds that Plaintiffs have asserted claims against the non-diverse Defendants for which relief *may* be granted in state court. Therefore, Plaintiffs' Motion to Remand must be granted. Because the Motion to Remand is granted herewith, the remaining Motions, except the Motion to Strike, must be denied without prejudice for lack of this Court's jurisdiction to render decisions on them.

IT IS THEREFORE ORDERED that the Motion of Plaintiffs to Remand [6–1] is hereby granted. The Clerk of the Court is hereby ordered to remand this case to the Circuit Court of Holmes County, Mississippi.

IT IS FURTHER ORDERED that the Defendants' Motion to Strike Plaintiffs' Rebuttal Brief in Support of Their Motion to Remand [38–1] is hereby denied.

IT IS FURTHER ORDERED that the following Motions are hereby dismissed *without prejudice:*

(1) Motion of Plaintiffs for Additional Time to Serve Process on Defendants [31–1];

(2) Motion of Defendants to Quash Improper Service of Process [30–1]; and

(3) Motion of Defendants to Dismiss for Lack of *In Personam* Jurisdiction, Insufficient Service of Process and Insufficient Process [34–1];