Ronald S. ROSS, Demos Marcus, Don Roy, Millard Maloney, Stewart F. Kopp, Glenn A. Herring, Tony Walker, Ronald Farmer, and Shelby Moss Plaintiffs

v.

LIFE INVESTORS INSURANCE COMPANY OF AMERICA, Family Heritage Life Insurance Company of America, and Rachel McGrew Defendants

No. CIV.A. 3:03CV460BN.

United States District Court, S.D. Mississippi, Jackson Division.

March 9, 2004.

Stephen L. Gowan, Boutwell & Gowan, PLLC, Hattiesburg, MS, Eddie J. Abdeen, Jackson, MS, Sam S. Thomas, Underwood Thomas, P.C., Jackson, MS, for Ronald S. Ross, Demos Marcus, Don Roy, Millard Maloney, Stewart F. Kopp, Glenn A. Herring, Tony Walker, Ronald Farmer, Shelby Moss, plaintiffs.

Margaret Oertling Cupples, J. William Manuel, Bradley, Arant, Rose & White, LLP, Jackson, MS, Markham R. Leventhal, Jorden, Burt, Boros, Cicchetti, Berenson & Johnson, Miami, FL, for Life Investors Ins. Co. of America, Rachel McGrew, defendants.

Alexander A. Alston, Jr., Brunini, Grantham, Grower & Hewes, Jackson, MS, for Family Heritage Life Insurance Company of America, defendant.

## AMENDED OPINION AND ORDER [1]

BARBOUR, District Judge.

This cause is before the Court on the following Motions:

1) Plaintiffs' Motion to Remand;

2) Defendants' Motion to Sever Misjoined Plaintiffs;

3) Defendant McGrew's Motion to Strike Affidavits; and

4) Defendants' Motion to File Surrebuttal in Opposition to Plaintiffs' Motion to Remand.

Having considered the Motions, Responses, Rebuttals, attachments to each, and supporting and opposing authority, the Court finds that:

1) Plaintiffs' Motion to Remand is well taken and should be granted;

2) Defendants' Motion to Sever Misjoined Plaintiffs is not well taken and should be denied;

3) Defendant McGrew's Motion to Strike Affidavits should be denied as moot; and

4) Defendants' Motion to File Surrebuttal in Opposition to Plaintiffs' Motion to Remand should be denied as moot.

## I. Background and Procedural History

This cause of action arises out of allegations by eight aggrieved insurance agents (the Plaintiffs) [2] for the wrongful denial of sales commissions by Defendant Life Investors Insurance Company of America (hereinafter "Life Investors"). The Plaintiffs were all insurance agents of either Defendant Life Investors Insurance Company of America (hereinafter "Life Investors") [3] or Equity National Life Insurance Company (hereinafter "Equity National") [4] . Defendant Rachel McGrew [5] supervised

---

1. The purpose of this Amended Opinion and Order is to correct a minor misstatement of facts which appears in an Opinion and Order rendered by the undersigned on March 2, 2004, and entered with the Clerk of the Court on the same day under docket entry no. seventy-six.

2. Ronald S. Ross, Demos Marcus and Ronald Farmer are Mississippi residents. However, Farmer voluntarily dismissed all of his claims through a pleading filed with the Court on May 21, 2003, under docket entry no. sixteen. Accordingly, the only Mississippi residents remaining as plaintiffs in this suit are Ross and

Marcus. The remaining six Plaintiffs are resident citizens of states other than Mississippi.

3. Life Investors is incorporated under the laws of the State of Iowa, with its principle place of business in Iowa. Accordingly, Life Investors is a citizen of Iowa for diversity of citizenship purposes.

4. Equity National is not a party to this suit. In June 1995, it merged into Life Investors.

5. McGrew is an adult resident citizen of the State of Mississippi.

the sales force of Life Investors in Mississippi and part of Louisiana.

The subject Complaint was filed in the Circuit Court of Madison County, Mississippi, on December 31, 2002. An Amended Complaint was filed on a later date, and on February 19, 2003, a Second Amended Complaint was filed. The following facts were derived from the Second Amended Complaint. Plaintiffs allege that they caused insurance policies to be placed on the books of Life Investors. Second Amended Complaint, ¶ 21. In accordance with agency contracts between Life Investors and Plaintiffs, Life Investors was to pay Plaintiffs commissions on the booked policies. *Id.* In 1999, Life Investors and McGrew formed a scheme to wrongfully deny Plaintiffs the premiums due to them on the booked policies. *Id.* at ¶ 23. This was accomplished by directing other agents of Life Investors to contact Plaintiffs' policy holders, and through fraudulent means, encouraging those insureds to cancel the policies sold by Plaintiffs and replace them with new policies issued by Life Investors. *Id.* Because of the aforementioned wrongful acts of Life Investors and McGrew, several policies that were sold by Plaintiffs were cancelled, and new policies were issued to those insureds. Second Amended Complaint, ¶ 26. Because of this sequence of events, Plaintiffs were wrongfully denied commissions that they earned. *Id.*

The allegations in the Second Amended Complaint to this point are limited to Defendants Life Investors and McGrew. The alleged wrongful conduct of Defendant Family Heritage Life Insurance Company of America (hereinafter "Family Heritage") [6] began in 2002. The salespeople at Life Investors were informed on October 1, 2002, that their agency relationships with Life Investors would be terminated. Second Amended Complaint, ¶ 27. This announcement was made in furtherance of a decision by Life Investors to terminate all positions for commissioned agents. *Id.* Several agents of Life Investors were encouraged to take positions with Defendant Family Heritage. *Id.* In connection with their agency relationship with Family Heritage, those agents were encouraged to engage in further re-writing of policies initially sold by Plaintiffs. *Id.* As a result, Plaintiffs lost further overrides and/or commissions due to them. *Id.*

Upon this factual foundation, Plaintiffs assert twenty-two claims against the Defendants through the Second Amended Complaint. Several of the claims are somewhat redundant. Essentially, Plaintiffs assert claims for an accounting of Defendants' records, breach of contract, breach of fiduciary duties, tortious interference with contract, interference with prospective business advantage, fraud, twisting, misappropriation of trade secrets, violation of the Mississippi Uniform Trade Secrets Act, negligence, civil conspiracy, infliction of emotional distress, slander and fraudulent concealment. Plaintiffs seek an unspecified amount of both compensatory and punitive damages.

Defendants removed the case to this Court on March 26, 2003, on the jurisdictional ground of diversity of citizenship. In the Notice of Removal, Defendants contend that this Court must exercise diversity of citizenship jurisdiction over the case because the only non-diverse Defendant, McGrew, was fraudulently joined. Defendants also contend that the Plaintiffs and/or the Plaintiffs' claims were fraudulently misjoined to defeat federal jurisdiction. Plaintiffs timely filed the subject Motion to Remand on April 25, 2003. The

---

**6.** Family Heritage is incorporated under the laws of the State of Ohio, with its principle place of business in Ohio. Accordingly, Fami-

ly Heritage is a citizen of Ohio for diversity of citizenship purposes.

Motion to Sever, the Motion to Strike and the Motion to File Surrebuttal were filed on September 3, 2003, December 4, 2003, and December 24, 2003, respectively. With the completion of remand related discovery, all of the Motions are now ripe for consideration.

## II. Analysis—Motion to Remand and Motion to Sever

### (A) Fraudulent Joinder Standard

■ Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin*, 882 F.2d at 190. To establish fraudulent joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003)(citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir.1999)).

■ When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judg-ment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995). However, "the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 333–34 (5th Cir.). Even under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000).

■ In *Travis*, the United States Court of Appeals for the Fifth Circuit reiterated the standard by which a plaintiff's claims must be analyzed to determine the fraudulent joinder question. The *Travis* court held:

[T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable*, not merely theoretical.

*Travis*, 326 F.3d at 648 (emphasis in original)(citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002)). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. *Badon*, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." *Id.*

■ When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992), but *"only* when

there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon,* 224 F.3d at 394 (emphasis in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). When analyzing the issues, the court must consider the status of discovery in the case. *McKee,* 358 F.3d at 333–334. In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan,* 989 F.2d at 816.

### (B) Analysis—Fraudulent Joinder

Diversity of citizenship jurisdiction requires satisfaction of the following two factors: (1) amount in controversy; and (2) diversity of citizenship. These requirements are set forth in 28 U.S.C. § 1332(a), which states in relevant part "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States...." The subject Complaint does not specify a dollar amount of damages sought by Plaintiffs. However, the Notice of Removal alleges an amount in controversy exceeding $75,000, and this allegation is not denied by Plaintiffs. Based on Plaintiffs' silence on the amount in controversy issue, and based on the nature of the subject claims, the Court finds that the amount in controversy requirement of § 1332(a) is met.

The issue to be resolved is whether the only non-diverse Defendant, McGrew, was fraudulently joined. If one or more of Plaintiffs' claims against McGrew represent a claim or claims for which a Mississippi state court may grant relief, then Defendants' fraudulent joinder arguments necessarily fail. As analyzed below, at least one of Plaintiffs' claims against McGrew passes this test.

McGrew, a Mississippi resident, was the sales manager of the two Plaintiffs who are also Mississippi residents (hereinafter "Mississippi Plaintiffs"). As their sales manager, the Mississippi Plaintiffs contend that McGrew incurred individual liability for the claims alleged in the Complaint. In the following analysis, the Court considers the potential liability of McGrew under counts four and sixteen of the Second Amended Complaint, both of which allege tortious interference with contract. Because the Court finds herewith that McGrew *may* be liable under Mississippi law for the claims in counts four and sixteen, the remaining counts in the Second Amended Complaint need not be analyzed.

To determine whether McGrew interfered with the contractual relationships between the Mississippi Plaintiffs and Life Investors, the Court must first determine whether a contract existed. Defendants argue that "[t]he Complaint does not identify any contract of plaintiffs with which McGrew interfered...." Defendants' Memorandum in Response to Plaintiffs' Motion to Remand, p. 23. This argument is not supported by the claims in the Second Amended Complaint. Plaintiffs clearly contend that they were under agency contracts with Life Investors. Second Amended Complaint, ¶ 21. The Court therefore finds that an agency contract existed between the Mississippi Plaintiffs and Life Investors.[7] Next considered is

---

**7.** Even if Defendants' argument accurately reflected the language of the Second Amended

whether a Mississippi state court *may reasonably* find that McGrew interfered with the Mississippi Plaintiffs' contractual relationships with Life Investors.

 The elements of proof for a claim of interference with contractual relationship were set forth by the Mississippi Supreme Court in *Par Indus. Inc. v. Target Container Co.*, 708 So.2d 44 (Miss.1998). The elements are:

(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*Id.* at 48 (citations omitted).

In light of the previous finding that a contract existed between the Mississippi Plaintiffs and Life Investors, the Court now finds that the arguments presented by Plaintiffs are sufficient to satisfy the four-factor test for tortious interference with contract set forth in *Par Indus.* In issue is Defendants' argument that McGrew, as an employee and/or agent of Life Investors, could not have tortiously interfered with contracts between Life Investors and other employees/agents of Life Investors. Defendants present many cases to support the proposition that Mississippi law does not allow a cause of action for tortious interference with contract under this scenario. However, Defendants conspicuously exclude any reference to *Sago v. Wal-*

*Mart Stores, Inc.*, 280 F.Supp.2d 578 (S.D.Miss.2003)(Barbour, J.), which directly addresses the subject issue.

In *Sago*, the plaintiffs were employees of defendant Wal–Mart. Plaintiffs alleged that they were wrongfully denied compensation for some of the hours that they worked. Several of the plaintiffs' supervisors were also defendants in the suit. Plaintiffs contended that the supervisors tortiously interfered with their contracts with Wal–Mart by either the wrongful alteration of time sheets, or by requiring Plaintiffs to work "off of the clock." Citing *Morrison v. Mississippi Enter. for Tech., Inc.*, 798 So.2d 567 (Miss.App.2001), this Court held that

if the individual Defendants had no *justifiable cause* for the alleged tampering with Plaintiffs' time sheets or the alleged requirement that Plaintiffs work "off the clock," then a reasonable possibility exists that a Mississippi state court could hold the individual Defendants liable for Plaintiffs' intentional interference with contract claim.

*Sago*, 280 F.Supp.2d at 586 (emphasis in original). This Court continued by finding that the plaintiffs' supervisors could not have had a justifiable cause for either tampering with plaintiffs' time sheets or forcing them to work "off the clock," and the case was remanded to state court. *Id.*

As in *Sago*, the Court finds that if McGrew interfered with the Mississippi Plaintiffs' contracts as alleged in the Second Amended Complaint, then she had no justifiable reason for so doing. Based on

---

Complaint, a reasonable inference can be made that an implied contract existed between the Mississippi Plaintiffs and Life Investors. If a person works for another with the reasonable expectation of payment, then the law implies a contract to pay for the services rendered. *In re: Estate of Stewart*, 732 So.2d 255, 259 (Miss.1999) (citations omitted); *Redd v. L & A Contracting Co.*, 246

Miss. 548, 151 So.2d 205, 209 (1963) (citation omitted). An implied contract "has the same legal effect as an express contract." *Franklin v. Franklin*, 858 So.2d 110, 120 (Miss.2003) (citations omitted). Under these holdings, the Court finds in the alternative that in the absence of an explicit contract, the Mississippi Plaintiffs were under implied agency contracts with Life Investors.

this finding, the Court concludes that Plaintiffs have asserted a claim against McGrew for which a Mississippi state court *may reasonably* grant relief. Accordingly, the Court finds that Defendants' fraudulent joinder arguments must fail.

## (C) Fraudulent Misjoinder Standard

Defendants also argue that this Court has jurisdiction over the case because Plaintiffs fraudulently misjoined their claims. Misjoinder of plaintiffs was first adopted by the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000). The *Tapscott* court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." [8] *Id.* at 1360. Citing *Tapscott*, the Fifth Circuit adopted the misjoinder of plaintiffs theory. *In re: Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir.2002)(holding that "misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction"). In a second opinion rendered in the *Benjamin Moore* case, the court held that "fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction...." *In re: Benjamin Moore & Co.*, 318 F.3d 626, 630–31 (5th Cir.2002).

In *Sweeney v. The Sherwin–Williams Company*, 304 F.Supp.2d 868 (S.D.Miss.2004)(Barbour, J.), this Court analyzed a case involving the fraudulent misjoinder issue, as adopted by the Fifth Circuit in the initial *Benjamin Moore* opinion. In *Sweeney*, the Court considered whether it should apply Rule 20 of the Mississippi Rules of Civil Procedure, or Rule 20 of the Federal Rules. This Court concluded that Mississippi Rule 20, rather than Federal Rule 20, should apply in a fraudulent misjoinder analysis.

This distinction is important because although the language of both Rules is functionally identical,[9] case law interpretations of Mississippi Rule 20 are more liberal than case law interpretations of Federal Rule 20 in regard to joinder of plaintiffs and claims. For example, in *Am. Bankers Ins. Co. of Florida v. Alexander*, 818 So.2d 1073, 1078 (Miss.2001) the Mississippi Supreme Court analyzed Mississippi Rule 20 and found that "[t]his Court has, in the

---

**8.** Although the misjoinder in *Tapscott* involved the egregious misjoinder of defendants, its rational also applies to misjoinder of plaintiffs. *Koch v. PLM Int'l, Inc.*, No. Civ. A. 97–0177–BH–C, 1997 WL 907917 at *2 (S.D.Ala. Sept.27, 1997); *Lyons v. The Am. Tobacco Co., Inc.*, No. Civ. A. 96–0881–BH–S, 1997 WL 809677 at *4 (S.D.Ala. Sept.30, 1997).

**9.** With the exception of the emphasized language, both the Federal Rule and the Mississippi Rule state:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons *(and any vessel, cargo or other property subject to admiralty process in rem)* may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. 20(a) and Miss R. Civ. P. 20(a)(emphasized language appearing only in Fed.R.Civ.P. 20(a)).

past, taken notice of the unavailability of class actions and has liberalized the rules of civil procedure at times in order to better accommodate parties who are consequently shut out of the legal system." In *Am. Bankers,* the court allowed joinder of 1,371 borrowers (plaintiffs) against a lender and collateral protection insurer. Citing *Am. Bankers,* the Mississippi Supreme Court in *Illinois Cent. R.R. Co. v. Travis,* 808 So.2d 928, 933 (Miss.2002), again reiterated that it utilizes "a liberal approach toward joinder."

■ Following *Am. Bankers* and *Illinois Cent.,* the Mississippi Supreme Court rendered a decision in *Janssen Pharmaceutical, Inc. et al. v. Armond, et al.,* 866 So.2d 1092 (Miss.2004). As compared to *Am. Bankers* and *Illinois Cent.,* the *Janssen* decision somewhat constricts the boundaries of permissive joinder. The issue decided by the *Janssen* court was "whether plaintiffs satisfy the requirements for permissive joinder under Mississippi Rule of Civil Procedure 20(a)." *Id.* at ¶ 3. The court found that the claims of fifty-six plaintiffs against the manufacturers of the drug Propulsid and forty-two physicians who prescribed the drug, were misjoined under Rule 20. *Id.* at ¶ 34. In so finding, the court considered the following factors: (1) whether the facts and witnesses supporting the claims of each plaintiff were the same (*Id.* at ¶¶ 20 & 31); (2) whether the volume of evidence would have resulted in jury confusion if joinder was allowed (*Id.* at ¶¶ 20 & 32); (3) whether the claims of each plaintiff were so small that separate trials would not be justified (*Id.* at ¶ 21); (4) whether only a single defendant was named (*Id.* at ¶ 24); and (5) whether a trial with the plaintiffs joined would require admission of evidence that would be inadmissible if the claims of each plaintiff were severed (*Id.* at ¶ 30).

This Court must analyze the subject fraudulent misjoinder issues in accordance with Mississippi Rule 20 and the holdings in *Am. Bankers, Illinois Cent.* and *Janssen.*

**(D) Fraudulent Misjoinder Analysis**

■ Defendants mention fraudulent misjoinder of Plaintiffs in their Response to Motion to Remand, but their primary arguments on this issue are presented in their Motion to Sever. In the Motion to Sever, Defendants rely heavily on the holdings of this Court in *Coleman v. Conseco,* 238 F.Supp.2d 804 (S.D.Miss.2002). The Court notes that after the Motion to Remand and Motion to Sever were filed, the holdings in *Coleman* pertaining to fraudulent misjoinder were abrogated in part. *See, Sweeney v. The Sherwin Williams Co.,* 304 F.Supp.2d 868 (S.D.Miss.2004). In the following analysis, the Court must therefore rely on holdings in *Sweeney,* rather than the holdings in *Coleman.*

The eight Plaintiffs in this case all allege that their injuries arose out of agency contracts between them and Life Investors. Although each Plaintiff was under a separate agency contract with Life Investors, the facts and law supporting their claims have numerous common factors. Also, if joinder is allowed, the evidence required to prove Plaintiffs' claims is not so voluminous that jury confusion will result. Finally, permitting joinder will not result in admission of prejudicial evidence that would be otherwise inadmissible if the claims are severed. These factors support a finding that Plaintiffs' claims were not fraudulently misjoined. Accordingly, the Court cannot exercise jurisdiction over this case based on Defendants' theory of fraudulent misjoinder of claims.

**(E) Conclusion—Motion to Remand and Motion to Sever**

Based on the analysis and findings presented above, the Court finds that Plain-

tiffs Motion to Remand must be granted and that Defendants' Motion to Sever must be denied.

### III. Analysis—Motion to Strike Affidavits and Motion to File Surrebuttal

In the Motion to Strike Affidavits, Defendants seek to strike affidavits submitted with Plaintiffs' Rebuttal in Support of Motion for Remand. The issues presented above were decided without reference to the affidavits in question. The Court therefore finds that the Motion to Strike Affidavits should be denied as moot.

In the Motion to Strike Surrebuttal, Defendants seek to file a Surrebuttal in Opposition to Plaintiffs' Motion to Remand. Defendants argue that a Surrebuttal is needed to rebut the allegations in the affidavits addressed in the previous paragraph of this Opinion. Because the Court did not consider the contents of those affidavits, the Motion to file Surrebuttal should be denied as moot as well.

### IV. Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand [10–1] is hereby granted. The Clerk of the Court is hereby ordered to remand this case to the Circuit Court of Madison County, Mississippi.

IT IS FURTHER ORDERED that the following Motions are hereby denied:

1) Defendants' Motion to Sever Misjoined Plaintiffs [39–1];

2) Defendant McGrew's Motion to Strike Affidavits [65–1]; and

3) Defendants' Motion to File Surrebuttal in Opposition to Plaintiffs' Motion to Remand [68–1].